Ryan C. KEY, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 92SC802.

Supreme Court of Colorado,
En Banc.

Jan. 10, 1994.

David F. Vela, State Public Defender,
Katherine Brien, Deputy State Public De-
fender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Timothy M.
Tymkovich, Sol. Gen., John Daniel Dailey,
Deputy Atty. Gen., Robert Mark Russel,
First Asst. Atty. Gen., Katherine M. Clark,
Asst. Atty. Gen., Crim. Enforcement Section,
Denver, for respondent.

Justice MULLARKEY delivered the
Opinion of the Court.

We granted certiorari to decide whether
the court of appeals properly concluded in
*People v. Key,* 851 P.2d 228 (Colo.App.1992)
(*Key I* ), that the defendant was deprived of
his constitutional right to counsel when the

trial judge held an *ex parte* scheduling conference with the jury during its deliberations. We also granted certiorari to determine whether the court of appeals correctly analyzed such a violation under the harmless error standard. For the reasons stated below, we affirm in part and reverse in part and return the case to the court of appeals with directions to remand to the trial court for a new trial.

## I

On July 4, 1990, Vincent Garcia (Garcia) and his family were having an outdoor barbecue dinner at their home. At approximately 6:00 p.m., two cars with several young male occupants drove slowly past Garcia's home, flashing "gang signs" with their hands out of the car windows. Approximately twenty minutes later, the occupants of the cars reappeared and entered Garcia's front yard. After challenging Garcia to a fist-fight, Alex Cowans (Cowans), one of the vehicle occupants and a defendant in the instant action, threw a punch at Garcia. A fight then erupted between the group of young men and Garcia's family. Garcia's father, uncle, brother-in-law, sister and neighbors were all involved in the melee.

At some point during the skirmish, one of the other vehicle occupants appeared with a gun and began brandishing it in the air. Cowans evidently took possession of the gun and pointed it at various people, asking them if they wanted to die. According to the testimony of five eyewitnesses at a pre-trial motions hearing, Cowans stood three feet away from Garcia and pointed the gun directly at Garcia's head. According to the same testimony, Cowans eventually pulled the trigger, but the gun failed to discharge. Garcia's father then wrestled Cowans to the ground, removing the gun from his hand.

The police arrived shortly thereafter and arrested several of the young men involved in the fight, including Cowans and the defendant, Ryan Key (Key). Several members of

the Garcia family identified Cowans to the police out of a group of arrestees as the individual who had pointed the gun at Garcia and pulled the trigger. The prosecution subsequently charged both Cowans and Key with attempted first degree murder, menacing and conspiracy to commit first degree murder.

At a pre-trial motions hearing in September 1990, the state presented five eyewitnesses, including Garcia, who testified under oath that it was Cowans who pointed the gun at Garcia's head. Officer Brian Fowle of the Denver Police Department specifically testified that on the day of the incident, a crowd of between fifteen and twenty people identified Cowans as the one who had the gun.

A jury trial in which both Cowans and Key were tried together commenced on December 17, 1990. At the trial, Garcia, his mother, father, sister and a close friend all testified that Key, and not Cowans, had in fact been the one who pointed the gun at Garcia. Defense counsel attempted to impeach these witnesses with their testimony from the pre-trial hearing as well as from police reports in which they had previously identified Cowans as the individual who pointed the gun at Garcia and pulled the trigger. The only explanations offered by these witnesses for their inconsistent statements as to the identification of the perpetrator were that the witnesses either "forgot" within twenty minutes of the brawl which defendant had pulled the trigger or that they were "mistaken" on both the day of the incident and at the pre-trial hearing ten weeks later.[1]

The jury began its deliberations early on Friday afternoon, December 21, 1990. After the jury had been deliberating for approximately three hours, the trial judge *sua sponte* reconvened the jury in the courtroom, without first notifying the defendants, their counsel or the prosecution. The judge proceeded to discuss scheduling matters with the jurors outside of the presence of all

---

1. Garcia explained the discrepancy in testimony by stating that on the day of the incident "I was freaked out, scared, and I just said whatever came to my mind." Garcia's father stated that

the description he gave of the person with the gun did not match the clothing worn by Key because he had been mistaken on the day in question.

counsel and the defendants.[2] He prefaced the conference with the following remarks:

You haven't had a whole lot of time to deliberate, about three hours or so, which is not a whole lot of time. We may need to talk about when we can reschedule your reconvening as a jury. We've got the holidays coming up, and I'm not sure if everyone's available to come back Monday morning or not, so I thought we better take a poll and chat about when we can reappear.

During the discussion, Juror Nichting stated that he would be leaving town the following morning on vacation and would not return until December 31. Juror Hurst then informed the judge that she was getting married on January 1, 1991, after which she would be departing for a two-week honeymoon. The judge then suggested that the jury reconvene on December 31, to which Juror Nichting responded that although he did not know what time he would arrive from Illinois by car that day, he could make it back in time to reconvene. The following dialogue then ensued:

JUROR BROWN: Your Honor, would it be possible for us to continue? I feel we're fairly close.[3]

THE COURT: We can go for a little while, but not too much longer, because they start locking this building up and we kind of lose access to it. But you certainly may deliberate further.

JUROR BROWN: Could we stay till 5:30?

THE COURT: Yes, that's probably about the fail-safe time, and then we'll re-

schedule. All right. We've got the 31st available. You don't want to do this the day before you get married, anyway, do you?

JUROR HURST: I hope not.

The meeting was then adjourned. The trial court did not inform either defense counsel or the prosecution of these *ex parte* communications.

Before the end of the day, the jury returned to the courtroom to deliver its verdicts.[4] The jury found Key guilty of criminal attempt to commit murder in the first degree[5] and menacing.[6] The jury acquitted Cowans of all charges.

Key appealed his convictions to the court of appeals, arguing that the actions of the trial court in holding an *ex parte* conference with the jury denied him his constitutional right to counsel at a critical stage of the proceedings. He further argued that the conference coerced the jury into reaching a verdict in violation of his constitutional right to a fair trial. He contended that these alleged errors mandated automatic reversal of his convictions.[7]

The court of appeals affirmed the judgment of conviction, holding that although Key was denied his constitutional right to counsel at a critical stage of the trial, harmless error analysis should be applied to *ex parte* communications between the trial judge and jurors. Citing the fact that the judge and jurors discussed only administrative matters and not the substantive law and that there was no evidence that the jury was deadlocked, the court of appeals concluded that

---

2. The following dialogue occurred between Key's attorney and the trial court just prior to the commencement of jury deliberations:

THE COURT: Okay. Let us know where you can be reached shortly—rather, on short notice.

MR. KORECKI: Judge, my office is about 15 minutes away—not even; it's about 12. Is that close enough?

THE COURT: That's fine. If you're within 15 minutes' traveling time, that's fine.

3. Juror Brown was the jury foreperson.

4. It is unclear from the record how much time transpired between the end of the scheduling conference with the jury and the termination of the jury's deliberations.

5. §§ 18–2–101 & 18–3–102, 8B C.R.S. (1986 & 1993 Supp.).

6. § 18–3–206, 8B C.R.S. (1986).

7. Key also argued before the court of appeals that: (1) the evidence was insufficient to sustain his conviction for attempted first degree murder; (2) the trial court committed reversible error by denying his motion for a new trial based on a juror's failure to disclose that she knew Key; and (3) the trial court failed to properly instruct the jury on the elements of attempted first degree murder.

the absence of counsel at the "scheduling conference" in this case was harmless beyond a reasonable doubt. *Key I,* 851 P.2d at 230.

## II

The right to counsel exists at every critical stage of a criminal proceeding. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *People v. Roybal,* 618 P.2d 1121, 1126 (Colo. 1980); *People v. Johnson,* 802 P.2d 1105, 1107 (Colo.App.1990), *rev'd on other grounds,* 815 P.2d 427 (Colo.1991). Stages of criminal proceedings have been held to be "critical" where there exists more than a "minimal risk" that the absence of the defendant's counsel might impair the defendant's right to a fair trial. *Gilbert v. California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967); *Sandoval v. People,* 172 Colo. 383, 389, 473 P.2d 722, 725 (1970). The defendant argues that the *ex parte* scheduling conference with the jurors during their deliberations occurred at a critical stage of the proceedings. We agree.

We have held that the defendant in a criminal case has a fundamental right under the Colorado Constitution to have counsel present "when the judge gives instructions to the jury or responds to questions from the jury." *Leonardo v. People,* 728 P.2d 1252, 1257 (Colo.1986); *see also Nieto v. People,* 160 Colo. 179, 183, 415 P.2d 531, 533 (1966). "It is therefore constitutional error for a trial judge to respond to an inquiry from a jury without first making reasonable efforts to obtain the presence of the defendant's counsel." *Leonardo,* 728 P.2d at 1257; *Nieto,* 160 Colo. at 183, 415 P.2d at 533 (stating that had the trial court waited until counsel could be present, it was doubtful any reversible error would have transpired over counsel's objection).

The People argue that *Leonardo* and *Nieto* are limited to circumstances where the trial judge gives instructions or responds to questions from jurors on the *legal issues or facts of the case.* While we agree that during jury deliberations a colloquy between the judge and jurors on legal or factual issues in the case constitutes a critical stage of the trial, we do not believe that a defendant's right to counsel during jury deliberations is so limited.

Not every communication between the judge and jury constitutes a critical stage of the trial. However, an impromptu conference with the jury during its deliberations may constitute a critical stage of the proceedings even where the discussions are purportedly confined to "scheduling" matters, because the content of such *ex parte* communications and the context in which they occur may create more than a "minimal risk" that counsel's absence would impair the defendant's right to a fair trial. Certainly such *ex parte* conferences during jury deliberations are best avoided because of the ever-present risk that the discussions may take an unexpected turn.

Under the facts of this case, we find that conducting a "scheduling conference" outside the presence of counsel presented a substantial risk to the defendant's right to a fair trial. The record clearly reveals that because of scheduling difficulties, at least two jurors, Mr. Nichting and Ms. Hurst, had substantial incentives to arrive at a verdict by the end of the first afternoon of deliberations. Juror Hurst specifically stated her hope that the jury would not have to reconvene on what the trial judge determined to be the only available date—New Year's Eve, the day before her wedding. Juror Nichting faced the prospect of driving all the way from Illinois to Denver on the day the jury was to reconvene.

Such scheduling pressures created a risk of coercion on the jury's deliberative process similar to that which might occur with a "time-fuse" instruction from the judge. *See Allen v. People,* 660 P.2d 896, 898–99 (Colo. 1983) (holding that an instruction from the judge ordering the jury to end its deliberations with a verdict or have a mistrial declared presented a risk of coercion which may violate the defendant's right to a fair trial). The presence of counsel is essential in such circumstances to gauge, for example, the reactions of the jurors and to preserve any objections or to move for a mistrial if it should appear that the proposed schedule

would infringe upon the defendant's right to a fair trial. *See Leonardo,* 728 P.2d at 1257 ("Implicit within this right [to counsel during communications between judge and jury] is the right of defense counsel to argue to the court concerning possible responses to the jury's inquiries and make objections, if desired, to those responses."). Accordingly, we agree with the court of appeals that the *ex parte* scheduling conference in this case constituted error depriving the defendant of his constitutional right to counsel at a critical stage of the proceedings.

### III

■ Having determined that constitutional error was committed, we must now determine the appropriate standard of review. The defendant contends that the absence of defense counsel at a critical stage can never amount to harmless error and that such error mandates automatic reversal. We disagree.

The United States Supreme Court "has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991); *Rose v. Clark,* 478 U.S. 570, 576, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986); *see generally Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The *Fulminante* Court segregated those cases in which the harmless error doctrine applies from those cases which may not be evaluated under harmless error analysis. *Fulminante,* 499 U.S. at 306–11, 111 S.Ct. at 1263–65. Harmless error analysis does not apply when there is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265.

Included within the category of "structural defects" are "total deprivation[s] of the right to counsel at trial."[8] *Id.* (citing *Gideon v.*

*Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); *Luu v. People,* 841 P.2d 271, 274–75 (Colo.1992). Conversely, harmless error analysis has been applied where mere "trial error" deprived the defendant of his right to counsel during a discrete stage of the proceedings. *See, e.g., Satterwhite v. Texas,* 486 U.S. 249, 257–58, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (admission of evidence at sentencing stage of capital case in violation of Sixth Amendment right to counsel); *Moore v. Illinois,* 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (admission of identification evidence in violation of right to counsel); *Coleman v. Alabama,* 399 U.S. 1, 11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387 (1970) (denial of counsel at preliminary hearing); *Siverson v. O'Leary,* 764 F.2d 1208, 1217 (7th Cir.1985) (absence of counsel during jury polling and delivery of verdicts); *see also Rushen v. Spain,* 464 U.S. 114, 118 n. 2, 121, 104 S.Ct. 453, 455 n. 2, 457, 78 L.Ed.2d 267 (1983) (applying harmless error analysis to communications between judge and juror outside presence of counsel without deciding whether violation of constitutional right to counsel occurred).

In this case, the defendant was deprived of his right to counsel during only one stage of the proceedings—a scheduling conference with jurors during their deliberations. This does not amount to a "total deprivation" of his right to counsel, nor can such error be classified as a "structural defect affecting the framework in which the trial proceed[ed]." Apart from the short, impromptu scheduling conference, counsel for the defendant was present for the entire proceeding. Unlike *Gideon,* where the defendant was erroneously denied any representation of counsel throughout the proceedings, the error in this case is more appropriately viewed as a "trial error," the impact of which can be quantitatively assessed on appellate review. *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. at 1264. Therefore, we agree with the court of appeals

---

8. Other constitutional errors which are not subject to harmless error analysis include: the presence on the bench of a judge who is not impartial, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); the unlawful exclusion of members of the defendant's race from the grand jury, *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the denial of the right to self-representation at trial, *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); and the denial of the right to a public trial, *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

that the harmless error doctrine should be applied in this case.

## IV

■ In cases of trial error involving the right to counsel, reversal is required "unless the appellate court can 'declare a belief that [the error] was harmless beyond a reasonable doubt.'" *Leonardo*, 728 P.2d at 1257 (quoting *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828). Under this standard, the prosecution has the burden of demonstrating that the *ex parte* scheduling conference did not contribute to the defendant's conviction. *Fulminante*, 499 U.S. at 295–96, 111 S.Ct. at 1257; *Chapman*, 386 U.S. at 26, 87 S.Ct. at 829; *Merritt v. People*, 842 P.2d 162, 169 (Colo.1992). For example, we have held that a constitutional error is harmless when the "evidence properly received against a defendant is so overwhelming" that such error was harmless beyond a reasonable doubt. *Bartley v. People*, 817 P.2d 1029, 1034 (Colo.1991); *People v. Myrick*, 638 P.2d 34, 38 (Colo.1981). By contrast, if there is a reasonable probability from a review of the entire record that the defendant could have been prejudiced, the error cannot be harmless. *Chapman*, 386 U.S. at 23–24, 87 S.Ct. at 827–28; *Leonardo*, 728 P.2d at 1257; *see Lybarger v. People*, 807 P.2d 570, 581 (Colo.1991).

■ In the instant case, we agree with the court of appeals that the trial judge was "simply attempting to produce a schedule that would be acceptable to each juror." *Key I*, 851 P.2d at 230. We do not agree, however, with its conclusion that the absence of defense counsel during that stage of the proceedings was harmless error. In our view, there is ample evidence to create a reasonable probability that the defendant was prejudiced by the deprivation of his right to counsel.

The record clearly shows that the evidence against Key was not "so overwhelming" that the constitutional violation in this case amounted to harmless error. Identification was the pivotal issue at trial. All of the witnesses who identified Key at trial as the one who pulled the trigger were impeached by their prior statements made under oath at the pre-trial hearing and immediately follow-

ing the incident. Those statements identified Cowans, and not Key, as the perpetrator. For example, both Garcia and his father told the police on the day of the incident that the person who pulled the trigger was wearing a white T-shirt and blue jeans. Testimony at trial indicated that Cowans was wearing a white T-shirt and blue jeans that day and that Key was wearing a black shirt and black jeans. None of these witnesses offered an explanation for the fact that all of them, including several of Garcia's family members, changed their version of the events, except to mention that "everyone makes mistakes." Based on this testimony, Key was convicted and Cowans was acquitted.

The only evidence the prosecution cites to support its view that the jury's decision to convict Key was not affected by the *ex parte* colloquy is the fact that the jury apparently was not "deadlocked" at that time. This fact does not discharge the prosecution's burden of showing that the error was harmless beyond a reasonable doubt. It is undisputed that the jury had not reached a decision prior to its scheduling conference with the trial judge. Thus, it is entirely possible that at least some members of the jury felt compelled to reach a decision before the end of the day as a result of the *ex parte* discussions.

The court's decision to reconvene the jury on New Year's Eve created a substantial conflict for at least two of the jurors. Had the trial court permitted the presence of counsel at the colloquy, a record of the reactions of the jurors to the proposed schedule could have been made. Without such a record, however, we are left to speculate whether members of the jury "surrender[ed] [their] ... honest conviction as to the weight and effect of the acts ... for the mere purpose of returning a verdict." *Allen*, 660 P.2d at 898. Mere speculation cannot satisfy the prosecution's burden of showing that the constitutional error in this case did not contribute to the defendant's conviction.

For the foregoing reasons, we conclude that there is a reasonable probability that the defendant was prejudiced by the violation of his right to counsel. Accordingly, we reverse

the judgment of conviction and return the case to the court of appeals with directions to remand the case to the trial court for a new trial.

SCOTT, J., specially concurs, and KIRSHBAUM, J., joins in the special concurrence.

VOLLACK, J., dissents, and ROVIRA, C.J., joins in the dissent.

Justice SCOTT specially concurring:

I agree with the majority that the defendant was denied his constitutional right to counsel at a critical stage of the proceedings. I also agree that this error entitles the defendant to a new trial. I write separately, however, because I do not agree that harmless error analysis is appropriate in reviewing this error. Thus, I specially concur in parts III and IV of the majority opinion.

In *Arizona v. Fulminante*, 499 U.S. 279, 306–14, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991), the Supreme Court held that the erroneous admission of a coerced confession could be reviewed under a harmless error analysis. The Court reasoned that the admission of an involuntary confession is a "'trial error,' similar in both degree and kind to the erroneous admission of other types of evidence." *Id.* at 310, 111 S.Ct. at 1265. Thus, an appellate court may "simply review[ ] the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt." *Id.* The Court cited a number of cases where harmless error analysis was applied to errors of constitutional magnitude and found that

[t]he common thread connecting these cases is that each involved 'trial error'— error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in or-

der to determine whether its admission was harmless beyond a reasonable doubt. *Id.* at 308-09, 111 S.Ct. at 1264. The Court distinguished these "trial errors" from "structural defects," which are not subject to harmless error analysis. Structural defects, it held, are "defects in the constitution of the trial mechanism;" they are errors "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265; *see also* Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 27.6, at 1170 (2d ed. 1992) ("[T]he characteristic of 'structural' defects most frequently mentioned in Supreme Court opinions is their 'inherently indeterminate' impact upon the outcome of the trial.").

Unlike *Fulminante* and the cases cited therein for support (the *"Fulminante* cases,") the error in the instant case is not a trial error susceptible to quantitative analysis. In the *Fulminante* cases, the reviewing courts were provided with the opportunity to examine the record to determine the impact of the error upon the jury in light of other evidence or other instructions also considered by the jury. Here, there is no information in the record to allow an objective analysis of the effect of the district court's ex parte communication with the jury. It is possible, as noted by the majority, *see* maj. op. at 825, that the judge's ex parte communication to the jury pressured the jury to reach a verdict by the end of the first afternoon of deliberations.[1] Two jurors in particular had significant reason to wish to resolve the case by the end of the day: Juror Hurst was to be married on January 1, the day following the date on which the judge suggested the jury should reconvene and indicated that she hoped the court would not reconvene on that day; and Juror Nichting was leaving town and was not scheduled to return until the date which the judge suggested they reconvene.[2] By not recalling counsel to

---

1. The record is silent as to how quickly the jurors reached a verdict after the judge spoke to them about the possibility of reconvening on New Year's Eve. Some guidance is provided by the judge's comment that the jurors had deliberated for "about three hours" prior to the *ex parte* communication and the judge's indication that

the jurors could not stay past 5:30 that afternoon to deliberate.

2. Even prior to trial, the judge was informed that several of the jurors were concerned about the length of the trial because it was scheduled for the week before Christmas. Also prior to trial, the judge was informed by Juror Hurst that she

be present while he spoke to the jury about potential dates to reconvene, the trial judge prohibited counsel from protecting the defendant's right to be tried by a fair and impartial jury. Had counsel been present at the time, he could have taken a number of precautions to ensure that the jury was not coerced into rendering a verdict.[3] Because counsel was not present, and these precautions were not taken, it is impossible to quantify the degree of prejudice here.

The majority implies that there is a connection between the duration of the asserted error and whether it is to be classified as a trial error or a structural error:

> In this case, the defendant was deprived of his right to counsel during only one stage of the proceedings—a scheduling conference with jurors during their deliberations. This does not amount to a "total deprivation" of his right to counsel, nor can such error be classified as a "structural defect affecting the framework in which the trial proceed[ed]." Apart from the short, impromptu scheduling conference, counsel for

the defendant was present for the entire proceeding. Unlike *Gideon*, where the defendant was erroneously denied any representation of counsel throughout the proceedings, the error in this case is more appropriately viewed as a "trial error," the impact of which can be quantitatively assessed on appellate review. Therefore, we agree with the court of appeals that the harmless error doctrine should be applied in this case.

Maj. op. at 826–27 (citation omitted).[4] I disagree that the duration of the error is determinative of whether it is a structural error affecting the framework of the entire trial. The events which unfold at any one of the critical stages of a trial may effect an entire proceeding. Whether a defendant is denied the right to counsel at one critical stage or at all critical stages is irrelevant; in both cases the dispositive fact remains whether or not the impact of the error can be quantified.[5]

In summary, I agree with the majority that the defendant was denied his constitu-

---

was getting married on January 1st and would be on her honeymoon after that date.

3. Among the options asserted by the petitioner as available to counsel had he been present to preserve the defendant's right to a fair trial are the following:

> First, counsel could have requested a mistrial on the grounds that the jury was unable to reach a unanimous decision. Second, counsel could have requested a mistrial on the grounds that there was no acceptable time to reconvene within the next few weeks. Third, counsel could have objected to the court's comments and lack of proper instructions which had the tendency to coerce the jury into reaching a verdict. Fourth, counsel could have requested that the jury be given the option of returning on Saturday, December 22, 1990, rather than on New Year's Eve. Fifth, counsel could have objected when the court told the jury that it could continue to deliberate that evening, but could not stay past 5:30. Sixth counsel could have objected to the court's request that the jury reconvene on December 31, 1990, which was completely unacceptable to the jury.... Seventh, counsel could have asked the court to inquire whether or not the jurors were dissatisfied with the December 31st date. Eighth, counsel would have observed the jurors reactions to the court's suggestions that they reconvene on December 31st, and could have put such reaction on the record. Ninth, counsel could have requested the court give the jury a

supplemental instruction directing them not to surrender their honest convictions as to the weight or effect of the evidence because the opinion of their fellow jurors or for the mere purpose of returning a verdict.

4. Under the majority's "total deprivation" rationale, I am left to wonder whether harmless error analysis would be utilized even if a defense counsel was absent during voir dire, opening argument, and direct and cross-examination, but was present for closing argument.

5. I would not hold that in every instance where a defendant has been denied the right to counsel at a critical stage of the proceedings, harmless error analysis is inappropriate. In some instances, the error may be measured quantitatively by the evidence which was admitted or not admitted due to counsel's absence. *See, e.g., Satterwhite v. Texas*, 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (finding harmless error where "the effect of the Sixth Amendment [right to counsel] violation is limited to the admission into evidence of Dr. Grigson's testimony."); *Moore v. Illinois*, 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (remand for determination of whether admission of pretrial identification evidence obtained in violation of defendant's right to counsel was harmless error). Additionally, like the majority, *see* maj. op. at 825, I would not hold that every communication between a judge and jury constitutes a critical stage of the trial.

tional right to counsel at a critical stage of the proceedings. It is my belief, however, that the state of the record, viewed in light of the nature of the violation, prohibits a quantitative assessment of the impact of this deprivation. I would therefore hold that the error must be considered a structural defect and is not susceptible to harmless error analysis.

I am authorized to say that Justice KIRSHBAUM joins in this special concurrence.

Justice VOLLACK dissenting:

The majority holds that the *ex parte* scheduling conference constituted error depriving the defendant of his constitutional right to counsel at a critical stage of the proceedings and that the harmless error doctrine should be applied in this case. Maj. op. at 826, 827. The majority concludes that there is a reasonable probability that the defendant was prejudiced by the deprivation of his right to counsel during the *ex parte* scheduling conference, maj. op. at 827, 828, and reverses the judgment of conviction.

I disagree and dissent from the majority because I do not believe that the *ex parte* scheduling conference with the jurors during their deliberations constituted a "critical stage" of the proceedings nor that the rights of the defendant were substantially prejudiced by the absence of counsel. *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). I further dissent because I believe that the court of appeals correctly reasoned that the trial court's "scheduling conference" with the jury during deliberations, in the absence of counsel, did not establish a reasonable probability that the defendant was prejudiced. In my view, Key's substantive rights were not adversely affected and the trial court's oversight in failing to have counsel present is harmless error.

I.

The salient facts to the dispositive issues are as follows: A jury trial commenced on December 17, 1990. The jury began its deliberations early on Friday afternoon, December 21, 1990. After approximately three hours of deliberating, the trial judge *sua sponte* reconvened the jury in the courtroom for the purpose of scheduling further deliberations, without first notifying the defendants, their counsel, or the prosecution. In the absence of all counsel and the defendants, the court sought to accommodate the jurors' holiday schedules by arranging in advance the next possible day of deliberations.[1] The trial· court stated:

> [W]elcome back, ladies and gentlemen of the jury. You haven't had a whole lot of time to deliberate, about three hours or so, which is not a whole lot of time. We may need you to talk about when you can reschedule your reconvening as a jury. We've got the holidays coming up, and I'm not sure if everyone's available to come back Monday morning or not, so I thought we better take a poll and chat about when we can reappear.

The judge learned that juror Nichting would be leaving town the following morning for a week's vacation and would not return until December 31. Juror Hurst also informed the judge that she was getting married on January 1, 1991, after which she would be departing for a two-week honeymoon. The judge then suggested that the jury reconvene on December 31, and the jury mutually agreed.

The following exchange occurred on the record before the jury returned its verdict:

> JUROR BROWN[2]: Your Honor, would it be possible for us to continue? I feel we're fairly close.
>
> THE COURT: We can go for a little while, but not too much longer, because they start locking this building up and we kind of lose access to it. But you certainly may deliberate further.

1. Before the jury began its deliberations, the trial court requested that Key's attorney provide the court with a place where he could be reached on short notice. Key's attorney informed the trial court that he could be reached in his office

which was twelve minutes' traveling time from the court.

2. Juror Brown was the jury foreperson.

JUROR BROWN: Could we stay till 5:30?

THE COURT: Yes, that's probably about the fail-safe time, and then we'll reschedule.

All right. We've got the 31st available. You don't want to do this the day before you get married, anyway, do you?

JUROR HURST: I hope not.[3]

After further deliberations that day, the jury reached a unanimous verdict.[4] The jury found defendant Key guilty of criminal attempt to commit murder in the first degree[5] and menacing.[6] The jury acquitted defendant Cowans of all charges. The trial judge, in announcing each verdict, asked the jury to confirm if this was the unanimous decision of all the jurors, and the foreperson answered in the affirmative. Defense counsel did not request further polling of the entire jury.

Key appealed his convictions to the court of appeals. Key argued that the actions of the trial court in holding an *ex parte* scheduling conference with the jury denied him his constitutional right to counsel during a critical stage of the proceedings. He further argued that the trial judge improperly coerced the jury into reaching a verdict in violation of his constitutional right to a fair trial. Key additionally alleged that, when the trial court judge improperly reconvened the jury in the absence of all counsel, the jury was deadlocked[7] and that, consequently, the trial court's errors required automatic reversal of his convictions. Key finally asserted that constitutional error results, even absent a showing of prejudice, when counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceedings.

The court of appeals, in a published decision, affirmed the trial court's judgment. In its determination, the court of appeals ac-

knowledged that, although the trial court's actions in conducting this *ex parte* conference with the jury deprived the defendant of his right to counsel at a critical stage of the proceedings, the error was harmless beyond a reasonable doubt. The court of appeals made this determination based on its review of the record since no evidence existed that the jury was deadlocked, and the scheduling conference spoke specifically to administrative needs and not to the substantive law. The court further found that the trial court did not coerce the jury into reaching a verdict since the jury was not deadlocked, no time limits were placed on the deliberations, and the jury foreperson indicated that the jurors were "fairly close" to reaching a decision. *People v. Key*, 851 P.2d 228, 230 (Colo. App.1992).

## II.

The majority opinion rightly observes that a criminal defendant is entitled to the presence of counsel at all "critical" stages of the proceeding under the Sixth Amendment of the United States Constitution. Maj. op. at 825. *See United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967); *People v. Roybal*, 618 P.2d 1121, 1126 (Colo.1980). The standard for determining what constitutes a "critical stage" of a criminal proceeding is whether the rights of the defendant could be substantially prejudiced by the absence of counsel at the proceeding. *Wade*, 388 U.S. at 227, 87 S.Ct. at 1932. The majority concludes that the *ex parte* scheduling conference with the jurors during their deliberations occurred at a critical stage of the proceedings. Maj. op. at 826. I disagree.

---

3. The trial court did not inform either defense counsel or the prosecution of these *ex parte* communications.

4. The record does not designate the period of time between the *ex parte* meeting and when the jury reached its verdict.

5. §§ 18–2–101, 18–3–102, 8B C.R.S. (1986 & 1993 Supp.).

6. § 18–3–206, 8B C.R.S. (1986).

7. Contrary to the defendant's assertions and as the court of appeals recognized, the record contains no evidence that the jury was deadlocked when they were called into conference by the trial judge.

In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court offered examples of stages of criminal proceedings that have been held to be "critical": total absence of counsel throughout the trial, denial of cross-examination, counsel's conflict of interest, and an inability of counsel to prepare for trial. *Id.* at 662, 104 S.Ct. at 2048. Certain stages of a criminal proceeding are deemed not "critical" because there is only a "minimal risk" that the absence of the defendant's counsel might derogate from the defendant's right to a fair trial. *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967) (the taking of handwriting samples from the accused did not constitute a "critical" stage of a criminal proceeding because there was minimal risk that the absence of counsel might derogate from an accused's right to a fair trial).

The majority opinion expands the "critical stage" of a criminal proceeding to encompass an *ex parte* scheduling conference with the jury during deliberations. This court, however, has only held that a defendant in a criminal case has a fundamental right under the Colorado Constitution to have counsel present during jury deliberations when the trial judge gives instructions or responds to questions from jurors involving legal issues or the facts of the case. *See Leonardo v. People*, 728 P.2d 1252, 1257 (Colo.1986); *Nieto v. People*, 160 Colo. 179, 415 P.2d 531, 533 (1966) (judge *restated instruction* for jury outside presence of defendant or counsel); *People v. Johnson*, 802 P.2d 1105 (Colo.App. 1990), *rev'd on other grounds*, 815 P.2d 427 (1991) (where the trial court held a closed hearing with all twelve jury members on possible *juror misconduct* during jury deliberations, jury deliberations and the return of the verdict constitute critical stages for purposes of the Sixth Amendment); *People v. Romero*, 767 P.2d 782 (Colo.App.1988) (defendant has a fundamental right to have counsel present when court *responds to questions* from the jury after it has commenced deliberations).

In *People v. Leonardo*, 728 P.2d 1252 (Colo.1986), this court noted:

We have not previously decided whether either the United States constitution or the Colorado constitution requires the presence of the defendant when the judge communicates with the jury *after* deliberations have begun. Also, the United States Supreme Court has not conclusively decided whether this is a critical stage of criminal proceedings so that the presence of the defendant is required.

*Id.* at 1257 n. 5 (citing *Rushen v. Spain*, 464 U.S. 114, 117–18 n. 2, 104 S.Ct. 453, 455–56 n. 2, 78 L.Ed.2d 267 (1983)).

I do not believe that an *ex parte* discussion with the jury concerning "scheduling" matters constitutes a critical stage of the proceeding to trigger the right to representation. It is my opinion further that the "scheduling conference" outside the presence of counsel did not create more than a "minimal risk" to the defendant's right to a fair trial.

### III.

The majority finds that the *ex parte* conference between the trial judge and the jury during deliberations, in the absence of counsel, did not constitute harmless error. The majority engages in fact-finding to determine that there is ample evidence to create a reasonable probability that the defendant was prejudiced by the deprivation of his right to counsel. Maj. op. at 827. I disagree with the majority's harmless error analysis since the majority substitutes its own judgment in weighing the substantive evidence and the credibility of the witnesses and therefore usurps the fact-finding province of the jury.

The issue here is whether the trial court committed error requiring reversal of the defendant's conviction in communicating with the jury, regarding scheduling matters, during the jury's deliberations in the absence of counsel.

A trial judge's *ex parte* communication with a jury does not require reversal per se, but reversal is required when prejudice to the defendant is shown that substantially influences the verdict or affects the fairness of the trial proceedings. *Chapman v. Cali-*

*fornia,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Leonardo,* 728 P.2d at 1257; *Key v. People,* 715 P.2d 319, 323 (Colo. 1986); *People v. Blalock,* 239 Ill.App.3d 830, 180 Ill.Dec. 576, 607 N.E.2d 645, *cert. denied,* 151 Ill.2d 567, 186 Ill.Dec. 386, 616 N.E.2d 339 (1993). An *ex parte* communication is deemed prejudicial to the defendant only when the jury's verdict may have been influenced by the judge's response. A key question in determining "prejudice" is whether defense counsel's presence could have had any effect on the communication or deliberative process. Several cases are instructive on this point.

In *State v. Dreessen,* 305 N.W.2d 438, 439 (Iowa 1981), in response to a note that the jury had been unable to reach a unanimous verdict after four hours of deliberation, the trial court, in the absence of counsel and defendant, stated that the jury needed to deliberate further and try to reach a verdict. The jury returned the next morning to resume deliberations and reached a verdict of guilty. The court found that, since there was no indication that had counsel and defendant been present the trial court would have done or said anything different, the *ex parte* communication amounted to harmless error and no prejudice arose.

The present case is similar to *Truscott v. Chaplin,* 403 F.2d 644, 645 (3d Cir.1968), where, after the jury had been deliberating for only an hour and a half, the *trial judge* sent a message to the jury asking if they were close to a decision without consulting with, and in the absence of, counsel. The Third Circuit found that no reversible error had occurred:

> We recognize that there may be times when administrative communications between judge and jury may properly transpire in the absence of counsel, so long as these communications do not contain supplemental instructions relating to the case and are clearly incapable of prejudicing the rights of the parties. In this general category would be communications relating to the jurors' welfare, comforts and physical needs. Such communications must not directly or indirectly refer to the specifics of the case, must be collateral to the issues under consideration, and must not be capable of affecting the deliberative process in any manner.

In *Commonwealth v. Bamber,* 463 Pa. 216, 344 A.2d 799, 803 (1975), the trial judge directed the jury, without prior notice to or knowledge of counsel, to continue its deliberations after learning from the jury that they were deadlocked. The court did not consider this communication to be an intrusion into the jury's deliberations. The court, therefore, found no reversible error. *See also United States v. Frazin,* 780 F.2d 1461, 1468–71 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986) (ruling that harmless error occurred when the judge made an *ex parte* communication with a deadlocked jury without notifying counsel because the message to keep deliberating was not coercive.)

In his dissent in *Yarsunas v. Boros,* 423 Pa. 364, 223 A.2d 696, 698 (1966), Justice Roberts, *quoting Kersey Manufacturing Co. v. Rozic,* 422 Pa. 564, 222 A.2d 713, 716 (1966), stated:

> "The reason for prohibiting a trial judge from communicating with a jury ex parte is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur. Where there is no showing either that the court's action may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves."

In determining the influence that the "scheduling conference" had upon the jury during its deliberations, I disagree with the majority's position that reasonable probability exists that the *ex parte* conference coerced the jury into returning a verdict before the end of the day. Maj. op. at 825, 827. Reversal is not required when the communication between the trial judge and the jurors did not affect Key's substantial rights.[8] While it

---

8. In analyzing this issue, I note that, during *voir dire,* both the trial court and counsel acknowledged that several jurors expressed concerns about the trial interfering with their Christmas plans. The scheduling conflict discussed during the *ex parte* conference with the jury was, there-

would have been better practice for the trial judge to have conducted the scheduling conference with the jurors in the presence of the prosecutor and defense counsel, even if the trial court did err, such error was harmless under the circumstances. The question, therefore, remains whether the defendant suffered any prejudice by the trial court's action.

The jury, during the *ex parte* discussions, did not receive additional instructions on the law or receive evidence, either through the rereading of testimony or the reintroduction of exhibits. For example, in *People v. Mickle*, 54 Cal.3d 140, 284 Cal.Rptr. 511, 814 P.2d 290 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992), the jury sent the court a note shortly after commencing deliberations asking for a "summarized definition of the charges of murder, First Degree, Second Degree." In the presence of the court clerk and reporter, but without notifying counsel, the court responded: "If you wish to be brought back into court, I will reread the information to you." The jury did not accept the court's offer and no further murder instructions were actually given after the jury retired to deliberate. The California Supreme Court stated:

> While the preferable practice is to notify counsel of all mid-deliberation jury inquiries, the trial court did not err here. A statutory or constitutional violation occurs only where the court actually provides the jury with instructions or evidence during deliberations without first consulting counsel.

*Id.* 284 Cal.Rptr. at 528, 814 P.2d at 307.

Another example is *Rushen v. Spain*, 464 U.S. 114, 121, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983), where the Court held that an *ex parte* communication between the trial judge and a juror, in which the juror told the judge of her personal acquaintance with a crime that was unrelated to the crimes at issue in the trial, was harmless error. The Court reasoned that the communication was innocuous since the judge and juror did not discuss

any fact in controversy or any law applicable to the case.

Here, the conference did not relate to the subject matter of the jury deliberations. Rather, the communication was administrative in nature in that the trial court discussed with the jurors from the bench in the courtroom and on the record the scheduling conflicts of two of the jurors.

What is most disturbing in this case is that the majority reverses the judgment of conviction based on speculation that the jury was feeling pressured to reach a verdict in an effort to complete the trial prior to the holidays. Maj. op. at 827. The majority makes the assumption that the trial judge's decision to reconvene on December 31 may have compelled the jury to reach a decision before the end of the day without the majority having sufficient evidence to support this contention.

I also do not find that the exchange that took place during the scheduling conference between the trial judge and jury prejudiced the rights of the defendant. The majority opinion offers no indication that, had counsel been present, the trial court would have done or said anything different from what it did do and say. I believe that, even if defense counsel had been present, counsel could not have offered any additional assistance in determining a date since two of the jurors' schedules severely restricted when deliberations could resume.

After careful review of the record and the case law, I am satisfied that Key was not prejudiced by the absence of counsel during the "scheduling conference." I find no reversible error. I conclude that, under these circumstances, any error in failing to have counsel present at the scheduling conference during the jury deliberations was not outcome determinative.

In reaching this conclusion, I am persuaded by several factors: the jury was not deadlocked, the judge did not place a time limitation on the deliberations,[9] and the judge did

---

fore, based on information already elicited during *voir dire*.

9. In *Allen v. People*, 660 P.2d 896 (Colo.1983), the trial court instructed a deadlocked jury that

they had fifteen more minutes to deliberate and that, if no decision was reached within that time, the court would declare a mistrial. Shortly thereafter, the jury returned guilty verdicts on all counts. *Id.* at 898. This court held that the

not communicate that the court would be inconvenienced by extended deliberations and that a verdict should be reached today. The court did not threaten the jurors that if they did not reach a decision by 5:30 p.m. they would have to come back on December 31 to continue deliberating. Rather, in holding the *ex parte* conference, the judge reconvened the jurors for the express purpose of ensuring that jury deliberations could continue for more than just one day in order to prevent a compromise verdict. The judge was merely trying to coordinate a date for further deliberations that would not interfere with the jurors' holiday plans. The judge and jurors mutually agreed that deliberations would resume on December 31, 1990. Further, the record does not reveal that any of the jurors felt pressured to immediately arrive at a verdict. On the contrary, at the scheduling conference the jury foreperson reported that the jury was fairly close to reaching a verdict and asked if they could continue deliberating that day in an effort to conclude the trial. Therefore, it cannot be said that the *ex parte* discussions triggered the guilty verdict.

In light of the above, I also cannot agree with the majority that the error involved in this case is of federal constitutional dimension. I therefore disagree with the majority's analysis of the issue under the harmless error standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[10] In *People v. Thomas*, 181 Colo. 317, 509 P.2d 592, 594 (1973), this court determined that none of the defendant's fundamental rights were affected when the jury, during its deliberations, requested that the

court furnish them with the police officers' report and the judge's reply, in the absence of counsel, did not add to or detract anything from the evidence. Because the record does not reveal that the *ex parte* "scheduling conference" prejudiced Key's rights, no reversible error occurred. *See People v. Lovato*, 181 Colo. 99, 507 P.2d 860 (1973) (The jury sent a note to the court advising that it appeared to be deadlocked. The court, without notifying counsel and in the absence of counsel, instructed the bailiff to tell the jury to "start all over again and keep working at it."); *People v. Thomas*, 181 Colo. 317, 509 P.2d 592 (1973) (discussed *supra*); *Wiseman v. People*, 179 Colo. 101, 498 P.2d 930 (1972) (The jury sent the following written inquiry to the judge: "Is the defendant charged with statutory rape only, or with statutory rape and assault?" Over the objection of defense counsel and in the absence of defendant, the judge answered in writing that the charge was statutory rape only.);[11] *People v. Martinez*, 42 Colo.App. 307, 600 P.2d 82 (1979) (The jury, after beginning deliberations, sent a substantive inquiry to the trial judge asking whether the defendant, his confederate, or both had to be armed. The trial judge, who was unable to contact defense counsel, did not commit reversible error by responding with a correct statement of the law that "it does not make any difference.").

I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA joins in this dissent.

---

"time fuse" instruction constituted plain error and required reversal. *Id.* The court noted that the instruction was potentially coercive because it ordered the jury to end its deliberations by returning a verdict or have a mistrial declared.

**10.** The harmless error analysis, invoked in *Chapman v. California*, has been applied to Sixth Amendment violations, including situations where defense counsel was absent during a critical stage of the trial. *United States v. Osterbrook*, 891 F.2d 1216, 1218 (6th Cir.1989).

**11.** In *Leonardo v. People*, 728 P.2d 1252 (Colo. 1986), this court noted that, in *People v. Lovato*, *People v. Thomas*, and *Wiseman v. People*,

the communication between the judge and jury involved matters that, at least arguably, *were minor and could not have affected the fundamental rights of the respective defendants.* However, to the extent that those cases can be read to support the proposition that a defendant must show prejudice in cases involving communications between the judge and jury concerning instructions in the absence of the defendant and his counsel, we expressly disapprove them.

*Leonardo*, 728 P.2d at 1257 n. 6 (emphasis added).

My reliance on these cases is merely to show that the communications at issue did not affect the fundamental rights of the respective defendants to constitute reversible error.