The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Travis Lavern MOORE, Defendant–Appellant.

No. 07CA1315.

Colorado Court of Appeals, Div. III.

May 27, 2010.

Rehearing Denied July 15, 2010.

---

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Travis Lavern Moore, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree

assault on a peace officer, vehicular eluding, driving under the influence, and reckless endangerment. He also appeals the district court's order denying his section 18–1.3–406(1)(a), C.R.S.2009, request for a reduction in sentence. We affirm the judgment and order.

## I. Background

Following a preliminary hearing, defendant appeared for arraignment with counsel who asked to withdraw from representation because the attorney-client relationship had deteriorated to the point that he believed he could not effectively represent defendant. Defendant did not object, and the trial court granted the withdrawal. The trial court confirmed with defendant, who was not eligible for representation by the public defender, that he wanted to retain new counsel. The trial court granted defendant a thirty-day continuance in order to retain counsel.

Defendant next appeared without counsel and informed the trial court he had not retained an attorney because of financial difficulties, citing an inability to draw on the equity in his home. The trial court continued the matter for two weeks and informed defendant that he needed to then appear with counsel. Defendant again appeared without counsel and informed the trial court that he had consulted with an attorney who had agreed to represent him, but that he had not yet retained her. The trial court, without asking defendant whether he wished to proceed pro se or advising him of the risks associated with self-representation, entered pleas of not guilty on defendant's behalf as to all charges and set the matter for further proceedings.

Defendant then appeared at two subsequent hearings without counsel. At the first, he was again admonished concerning not having counsel present. At the second, defendant advised the trial court that he was financially unable to retain counsel. At the next hearing, defendant appeared without counsel, again explaining that he was financially unable to retain counsel. The trial court set the matter for a motions hearing.

Defendant then qualified for appointed counsel, who appeared and stated that she thought the case was going to be set over for arraignment. Upon being advised that defendant first appeared eleven months earlier and pleas had been entered approximately four months earlier, defendant waived his statutory speedy trial rights and the matter was set for motions hearings and trial.

Defendant was convicted at trial of the offenses set forth above and, as pertinent here, was sentenced to ten years in the Department of Corrections (DOC). Shortly thereafter, he filed a motion under section 18–1.3–406(1)(a), in which he sought a reduction in his crime of violence sentence. At the hearing on the motion, the trial court concluded it could not modify defendant's sentence.

## II. Right to Counsel

Defendant contends he was denied his constitutional right to counsel when the trial court entered a plea of not guilty for him while he was unrepresented. More particularly, defendant asserts that counsel was required at arraignment, because the entry of a plea of not guilty may constitute a waiver of rights if they are not asserted before, at, or shortly after arraignment. Defendant further argues that (1) the denial of counsel at the arraignment was structural error; (2) he was presumptively prejudiced; (3) the constitutional harmless error standard does not apply; and (4) reversal is required. We disagree.

"Constitutional error occurs when a defendant is deprived of the presence of counsel at critical stages of the proceedings where there is more than a minimal risk that counsel's absence will undermine the defendant's right to a fair trial." *People v. Cohn,* 160 P.3d 336, 342 (Colo.App.2007) (citing *Key v. People,* 865 P.2d 822, 825 (Colo.1994)). The arraignment of an accused is a critical stage of criminal proceedings. *Hamilton v. Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); *People v. Meyers,* 617 P.2d 808, 814 (Colo.1980). A trial may be presumptively unfair if the accused is denied the presence of counsel at "a critical stage" that holds "significant consequences for the

accused." *Bell v. Cone*, 535 U.S. 685, 695–96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

Here, without asking defendant whether he understood and waived his right to counsel, the court entered pleas of not guilty to all charges. The court did not attempt to obtain a waiver, and defendant did not, expressly or impliedly, waive his right to counsel. *See King v. People*, 728 P.2d 1264, 1269 (Colo.1986)

Defendant, relying on the Supreme Court's decision in *Hamilton*, argues that the absence of defense counsel at arraignment amounts to a structural error mandating automatic reversal of his conviction. In *Hamilton*, a death penalty case, the Court reviewed the particulars of the applicable state law and concluded, "What happens [at arraignment] may affect the whole trial. Available defenses may be as *irretrievably lost*, if not then and there asserted, as they are when an accused represented by counsel waives a right for strategic purposes." *Hamilton*, 368 U.S. at 54, 82 S.Ct. 157 (emphasis added). The Court determined that "[w]hen one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted" because "the degree of prejudice can never be known." *Id.* at 55, 82 S.Ct. 157.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court rejected the idea that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed prejudicial, requiring the automatic reversal of a defendant's conviction. *Id.* at 21–22, 87 S.Ct. 824; *see Bell*, 535 U.S. at 695–96, 122 S.Ct. 1843 (a "critical stage" is one resulting in "significant consequences").

Moreover, our supreme court has held that the absence of defense counsel at a critical stage can be analyzed under the constitutional harmless error standard. *Key*, 865 P.2d at 826. In *Key*, the court observed that the total deprivation of counsel at trial constitutes a "structural defect," but the lack of counsel at only one stage of a proceeding is not necessarily a "structural defect affecting the framework within which [a] trial proceeds." *Id.* (quoting *Arizona v. Fulminante*,

499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

Here, defendant was without counsel at his arraignment and at several subsequent hearings where substantive matters were not addressed, but he was represented by counsel at the motions hearings and throughout trial. This does not amount to a "total deprivation" of counsel and, therefore, is not, in our view, structural error. Instead, the error can be evaluated under the constitutional standard of harmless beyond a reasonable doubt, which requires reversal where there is a reasonable possibility that the defendant could have been prejudiced. *Leonardo v. People*, 728 P.2d 1252, 1257 (Colo.1986) (citing *Chapman*, 386 U.S. at 23–24, 87 S.Ct. 824).

Defendant argues that he lost certain rights because of the lack of counsel at his arraignment, thereby suffering "significant consequences." *See* § 16–8–103(1.5)(a), C.R.S.2009 (concerning post-arraignment changes in plea to not guilty by reason of insanity and allowing for change upon a showing of good cause, which is reviewable on appeal); § 18–1–202(11), C.R.S.2009 (a defendant must raise an objection to venue within twenty days, with an exception for good cause shown); Crim. P. 7(g) (a defendant must move for a bill of particulars "within ten days after arraignment or at such other time before or after arraignment as may be prescribed by rule or order"); Crim. P. 12(b)(2)-(3) (the defendant must raise, within twenty days following arraignment, any defense or objection based on defects in the prosecution other than jurisdiction).

However, there is no indication in this record that he requested and was denied, much less denied on the basis that the request was untimely, a change of plea, a change of venue, a bill of particulars, any defense or objection based on a nonjurisdictional defect in the prosecution, or any other procedural or substantive right or privilege. Further, defendant does not assert that he desired, or had any reason, to pursue any of the aforementioned courses of action.

In addition, unlike the Alabama state law analyzed in *Hamilton*, Colorado allows exceptions to most of the foregoing procedural

rules for "good cause"; thus defendant's pre-arraignment rights were not "irretrievably lost." As a consequence, the entry of the pleas of not guilty here did not so affect the framework in which defendant's trial proceeded such that prejudice can or must be presumed.

Therefore, because defendant has not stated a claim of prejudice, and we discern none, we conclude the error was harmless beyond a reasonable doubt.

### III. Sentence Reduction

Defendant contends the trial court misinterpreted the law when it denied his motion to reduce his sentence under section 18–1.3–406(1)(a). More specifically, defendant argues that the trial court misperceived the scope of its discretion when it concluded that the fact "the victim was not injured in this case does not qualify as an exceptional, unusual, or extenuating circumstance" that would support a sentence reduction. We disagree.

### A. Reviewability

At the outset, the prosecution argues that we should dismiss this appeal of the sentence reconsideration order because a trial court's exercise of discretion in sentencing is generally not reviewable. *See Shipley v. People*, 45 P.3d 1277, 1282–83 (Colo.2002). Here, however, defendant argues that the trial court misapprehended its discretion to act under the crime of violence statute. If a sentencing court declines to exercise its discretion because it erroneously considers itself bound to impose a sentence to the Department of Corrections, the defendant's appeal is not barred. *Id.* Therefore, we will address the issue of misapprehended discretion.

### B. Reduction of a Crime of Violence Sentence

Defendant filed his motion to reduce his sentence pursuant to section 18–1.3–406(1)(a), which, in pertinent part, provides:

Any person convicted of a crime of violence shall be sentenced ... to the department of corrections for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range provided for such offense in section 18–1.3–401(1)(a), as modified for an extraordinary risk crime pursuant to section 18–1.3–401(10), without suspension; *except that, within ninety days after he or she has been placed in the custody of the department of corrections, the department shall transmit to the sentencing court a report on the evaluation and diagnosis of the violent offender, and the court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence....*

(Emphasis added.)

The trial court denied the motion, stating, in pertinent part, as follows:

Mr. Moore, I've got to tell you that judges apply the law given to them by the legislature. We don't make the law, and we don't do what we would like to do. I'll be very candid with you I thought a 10 year sentence was a little out of line for the conduct involved in this case, and I made no secret of that. That's not something I'm telling you for the first time. But I am bound by what the legislature tells me I must do and I sentenced you to 10 years because that's what they told me I must do. I understand that in this case no injury was caused to [the victim], but the legislature tells me and the first degree assault statute, that that does not matter. They have made that decision, and they have made the decision that even though no injury is caused to someone, that is no reason why a person convicted of that offense should not be subject to the violent crime [sentencing].

So in my view, the fact that the victim was not injured in this case does not qualify as an exceptional, unusual, or extenuating circumstance.

Prior to the filing of the motion, the DOC completed and filed with the trial court its evaluation and diagnosis report. Defendant's motion was accompanied by a significant number of personal recommendations; a qualified acceptance by the victim, based in part on his having consented to a plea bargain calling for a four-year sentence; certificates of completion of Internet courses offered by a prison ministry; and other certificates and documents.

First degree assault is a class 3 felony, a per se crime of violence, and an extraordinary risk of harm offense. *See* §§ 18–1.3–401(10)(a), (b)(XII), 18–1.3–406, 18–3–202(2)(c), C.R.S.2009. The presumptive sentencing range is, therefore, ten to twenty-four years. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2009. Defendant was sentenced to the minimum in that presumptive range. While section 18–1.3–406(1)(a) requires that a sentence for a crime of violence be at least the midpoint of the presumptive range for the offense, it also permits a court to reduce the sentence below that mandatory minimum. *See Beyer*, 793 P.2d at 646.

As pertinent here, a person commits the crime of first degree assault if,

[w]ith *intent to cause serious bodily injury upon the person of a peace officer or firefighter, he or she threatens with a deadly weapon a peace officer or firefighter engaged in the performance of his or her duties,* and the offender knows or reasonably should know that the victim is a peace officer or firefighter acting in the performance of his or her duties.

§ 18–3–202(1)(e) (emphasis added).

First degree assault on a police officer does not require the actual infliction of injury, much less serious bodily injury. It does, however, require a person to threaten with a deadly weapon, with the intent to cause serious bodily. A perpetrator's failure to inflict injury when his or her intent was to inflict serious bodily injury cannot, as a matter of law, be considered a mitigating fact, much less an extraordinary mitigating fact. While the analogy is not perfect, requesting a sentence reduction, in this case, because the victim was not injured is akin to requesting a sentence reduction in a case of first degree assault involving the requisite intent, a deadly weapon, and serious bodily injury because the victim lived.

The judgment and order are affirmed.

Judge DAILEY and Judge RICHMAN concur.