The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 12, 2021

**2021COA106**

**No. 18CA1408, *People v. Wright* — Crimes — Harassment — Second Degree Burglary**

A division of the court of appeals concludes, as a matter of first impression, that the crime of harassment, as described in section 18-9-111(1)(a), C.R.S. 2020, is necessarily a "crime against another person," and can thus serve as a predicate offense for the crime of burglary under section 18-4-203(1), C.R.S. 2020.  In addition, the division concludes that the crime of possession of a weapon by a previous offender is not a per se grave and serious crime for purposes of conducting a proportionality review, disagreeing with *People v. Allen*, 111 P.3d 518 (Colo. App. 2004).

Court of Appeals No. 18CA1408
El Paso County District Court No. 17CR5863
Honorable William B. Bain, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Thomas Jean Wright,

Defendant-Appellant.

## JUDGMENT AFFIRMED, SENTENCE VACATED, AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Furman and Gomez, JJ., concur

Announced August 12, 2021

Philip J. Weiser, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dayna Vise, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Michael Thomas Jean Wright, appeals her[1]

judgment of conviction entered on jury verdicts finding her guilty of

second degree burglary, child abuse, resisting arrest, obstruction of

a peace officer, harassment, and possession of drug paraphernalia.

This appeal requires that we address an apparent issue of first

impression: Is harassment under section 18-9-111(1)(a), C.R.S.

2020, a "crime against another person" that can serve as a

predicate offense for second degree burglary under section

18-4-203, C.R.S. 2020?[2]  Because the statutory elements of the

---

[1] The record shows that the court, the prosecutor, the defense attorney, and the witnesses all used "Mister" and male pronouns when referencing Wright at trial.  However, according to Wright's appellate counsel, Wright is a transgender woman whose pronouns are she/her.  We will thus refer to her accordingly.  Although counsel also indicates that Wright now goes by a different name, we nevertheless use the name under which Wright was prosecuted, convicted, and sentenced, in order to avoid any confusion or errors in the judicial and prison records, as well as the statewide and nationwide criminal information databases.  We mean no disrespect in doing so.

[2] There are several subsections of section 18-9-111, C.R.S. 2020, which describe different forms of the crime of harassment.  *See* § 18-9-111(1)(a)-(h), C.R.S. 2020.  This case, and particularly our analysis in Part II, involves only subsection (1)(a).  Thus, when we refer to harassment, we mean only harassment under section 18-9-111(1)(a).  We express no opinion regarding whether any other type of harassment can serve as a predicate offense of second degree burglary.

offense necessarily constitute "a crime against another person," we decline to follow the fact-specific approach to resolving such inquiries espoused in *People v. Poindexter*, 2013 COA 93. Instead, we conclude, as a matter of law, that the offense can serve as a predicate to second degree burglary.

¶ 2　　Having so concluded, and because we also reject Wright's contention that the trial court's ex parte communications with the jury violated her constitutional rights to counsel and to be present, we affirm her conviction.

¶ 3　　Wright also challenges, on proportionality grounds, the habitual criminal sentence imposed on her second degree burglary conviction. Applying the standard announced in *Wells-Yates v. People*, 2019 CO 90M, we conclude that possession of a weapon by a previous offender (POWPO) is not a per se grave or serious crime for purposes of a proportionality review. Because the trial court incorrectly considered POWPO and second degree burglary to be per se grave or serious crimes, we vacate Wright's sentence and remand for a new proportionality review.

## I.　Background

¶ 4　　The jury heard the following evidence.

¶ 5    On October 12, 2017, Wright went to an apartment complex in Colorado Springs ostensibly to search for her daughter, apparently under the belief that her daughter was being held in one of the apartments and was possibly in danger.

¶ 6    Wright began banging on the door of one of the apartment units and indicated that she was looking for "Alexis," who she said was her daughter and whom she believed to be inside the unit. The resident of the unit eventually answered the door and told Wright that her daughter was not there. After a lengthy exchange, the resident closed the door without permitting Wright to enter.

¶ 7    Wright continued her search, banging on the doors of several other nearby apartment units. Eventually, Wright knocked on the door of the unit in which Phillip Bloch was residing with his son. Before answering, Bloch asked who was at the door, to which Wright responded that she was looking for someone named "Jasmine." Bloch opened the door. Wright continued to inquire about "Jasmine," and Bloch indicated that he did not know anyone by that name. Bloch then shut the door.

¶ 8    After knocking on the doors of several other units, Wright returned to Bloch's unit and knocked again. Bloch opened the

3

door, warned Wright to leave the premises, and closed the door again. before closing the door once again. Wright, however, continued to knock on Bloch's door. When Bloch opened the door to warn Wright he was going to call the police, Wright rushed into the unit and tried to grab Bloch by the throat.

¶ 9   A physical altercation ensued, during which Bloch retrieved a firearm from his bedroom. Bloch pointed his firearm at Wright, who was standing near the doorway, and demanded that she "move." Wright began pushing farther into the unit, again asking for "Jasmine." The altercation escalated: Bloch pushed Wright up against a wall and aimed the firearm at her stomach while Wright continued to grab Bloch by his throat. Bloch's two-year-old son approached the scuffle, and Wright, apparently in an effort to attack Bloch, kicked Bloch's son across the room. Bloch pulled the trigger of his firearm three times, but it failed to fire. Bloch tossed the firearm aside and pushed Wright out of the apartment. He then called the police.

¶ 10   Police responded to the apartment complex and arrested Wright after having to subdue her with physical force. The police

searched her person and discovered a pipe that later tested positive for methamphetamine.

¶ 11    Wright was charged with possession of drug paraphernalia, obstruction of a peace officer, resisting arrest, child abuse, harassment, and second degree burglary (predicated on harassment).[3]  She was also charged with five habitual offender counts.

¶ 12    Following a two-day trial, a jury found Wright guilty on all substantive counts.

¶ 13    At Wright's sentencing hearing, the trial court adjudicated Wright to be a habitual offender.  After conducting an abbreviated proportionality review, the court sentenced her to forty-eight years in the custody of the Department of Corrections for her second degree burglary conviction consistent with the habitual criminal sentencing statute.  The court merged Wright's harassment conviction into her second degree burglary conviction.[4]  It imposed

---

[3] As charged, second degree burglary was a class 3 felony because Wright was alleged to have specifically burglarized a "dwelling." § 18-4-203(2)(a), C.R.S. 2020.
[4] The People do not separately appeal this decision.  Thus, we express no opinion as to whether such merger was required.

a concurrent ninety-day sentence for Wright's child abuse, resisting arrest, and obstruction of a peace officer convictions.[5]

## II.     Sufficiency of the Evidence

¶ 14     Wright contends that the crime of harassment, as charged under section 18-9-111(1)(a), cannot serve as a predicate offense for second degree burglary because it is not "a crime against another person."  And even if it can, she contends, there was insufficient evidence presented at trial to support her burglary conviction predicated on harassment.  Accordingly, she argues, her conviction and sentence for burglary must be vacated.  We disagree with both contentions.

### A.     Harassment is Necessarily a "Crime Against Another Person"

¶ 15     We first address Wright's contention that her burglary conviction cannot be predicated on harassment.

¶ 16     As relevant here, "[a] person commits second degree burglary . . . if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry

---

[5] The crime of possession of drug paraphernalia is punishable only by a fine.  § 18-18-428(2), C.R.S. 2020.  At Wright's sentencing, the court found her to be indigent and waived the fine.

in a building or occupied structure with intent to commit therein a crime against another person or property." § 18-4-203(1). Thus, only those crimes "against another person or property" can serve as a predicate offense for second degree burglary. Whether the crime of harassment can be so classified presents a question of statutory interpretation that we review de novo. *See Poindexter*, ¶ 6.[6]

¶ 17    The General Assembly has not defined the term "crime against another person." However, in *Poindexter*, a division of this court ascribed to the term the following definitions:

> 1. "[a] category of criminal offenses in which the perpetrator uses or threatens to use force"; or
>
> 2. "[a] crime against the body of another human being."

*Poindexter*, ¶ 11 (quoting Black's Law Dictionary 401, 1112 (8th ed. 2004)); *see id.* at ¶ 29 (applying those definitions). We agree with the division in *Poindexter* that these definitions accord the term its plain and ordinary meaning. *See id.* at ¶ 26. Thus, we apply these definitions here to effectuate the legislature's intent. *See, e.g.*,

---

[6] The People do not contend that harassment is a "crime against . . . property." Thus, we address only whether it is a "crime against another person."

*McCoy v. People*, 2019 CO 44, ¶ 37 ("[T]o ascertain and give effect to the legislature's intent . . . , we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings.").

¶ 18     Under section 18-9-111(1)(a), "[a] person commits harassment if, with intent to harass, annoy, or alarm another person, he or she . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact." Thus, to commit harassment, one necessarily must subject another to some form of "physical contact." Unequivocally, then, the offense requires that one engage in an act "against the body of another human being." Accordingly, we conclude, as a matter of law, that harassment is a "crime against another person."

¶ 19     Wright advances two arguments opposing such an interpretation. Neither is persuasive.

¶ 20     First, Wright points out that the harassment statute is located in article 9 of title 18 (entitled "Offenses Against Public Peace, Order, and Decency"), not in article 3 (entitled "Offenses Against the Person"). She suggests, therefore, that harassment is not a "crime against another person," but is instead an offense against "public

peace, order, and decency," placing it outside the class of crimes designated by the legislature as possible predicates to burglary. Yet Wright also acknowledges that "the placement of criminal statutes in particular articles does not necessarily reflect the legislature's intent." *Poindexter*, ¶ 28. The titles of the specific articles and parts in the statutory code "are generally left to the revisor of statutes, who possesses no authority to make substantive statutory changes." *People v. Borghesi*, 66 P.3d 93, 102 (Colo. 2003). And even if we were to assume that the statute's organizational placement reflects the will of the legislature, the plain language of the statute — which unambiguously indicates that harassment is a "crime against another person" — is controlling in our interpretation.[7] *See McCoy*, ¶ 37 ("[T]o ascertain and give effect to the legislature's intent . . . , we look first to the language of the statute . . . .").

¶ 21    Second, Wright argues, relying on *Poindexter*, that we ought to avoid categorizing harassment as "a crime against another person"

---

[7] Notably, the statute does not say "with the intent to commit an offense against the person as described in article 3 of title 18" or include any similar specific cross-reference.

as a matter of law and instead consider the particular factual circumstances of her case.

¶ 22     In *Poindexter,* a division of this court considered whether obstructing a peace officer under section 18-8-104(1)(a), C.R.S. 2020, was a "crime against another person" such that it could serve as a predicate offense for second degree burglary.  But the division ultimately cautioned against any "sweeping attempt to categorize offenses as a matter of law" and declined to do so.  *Poindexter*, ¶ 26. Instead, the division concluded that "the proper approach" to determining whether an offense can serve as a predicate for burglary "involves a case-by-case examination of the underlying elements of the offense as charged and proved."  *Id.*  In other words, the court must consider the particular factual circumstances of each case and whether the evidence established that the offender intended to either act "against the body of another human being" or "use[] or threaten[] to use force."  *See id.* at ¶¶ 11, 29 (quoting Black's Law Dictionary at 401, 1112).

¶ 23     Applying that case-specific approach, the division acknowledged that the defendant, in unlawfully entering a building, only had the intent to hide from police officers in pursuit of him,

10

not to engage with them physically. *Id.* at ¶¶ 29-30. Thus, while the evidence indicated that the defendant had the intent to commit obstruction of a peace officer, *see* § 18-8-104(1)(a), it did not show that he had the intent to commit a "crime against another person." *Poindexter*, ¶¶ 29, 30, 34. "Under these circumstances," the division concluded, obstruction of a peace officer "could not be used as a predicate offense for second degree burglary." *Id.* at ¶ 34.

¶ 24     In reaching its conclusion, though, the division clarified that "under a different set of facts, the crime of obstructing a peace officer could be a crime against another person." *Id.* at ¶ 31. Thus, the division recognized that proving the elements of the offense cannot be dispositive as to whether an offender committed a "crime against another person." Accordingly, as to the crime of obstructing a peace officer, whether the commission of the offense constitutes a "crime against another person" must necessarily be a fact-specific inquiry.

¶ 25     We do not read *Poindexter* to suggest that such a fact-based inquiry is necessary with all crimes. Indeed, the division noted that crimes such as child abuse, pandering of a child, and resisting arrest by physical force are "obviously" crimes against a person. *Id.*

11

at ¶ 27. In our view, harassment is also obviously a crime against a person.

¶ 26 As noted above, because subjecting another to "physical contact" is an essential element of harassment, there is no factual scenario that can constitute harassment that would not also constitute a "crime against another person." And where there is no question as to whether the commission of an offense would equate to the commission of a "crime against another person," we see no reason to follow the case-specific approach employed in *Poindexter*. Thus, we decline to do so. *See People v. Smoots*, 2013 COA 152, ¶ 21 ("[W]e are not bound by the decisions of other divisions of this court."), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

¶ 27 Accordingly, we conclude, as a matter of law, that harassment under section 18-9-111(1)(a) is a "crime against another person" that can serve as a predicate offense for second degree burglary.

### B. The Evidence Was Sufficient To Support Wright's Burglary Conviction

¶ 28 Having so concluded, we now address, and reject, Wright's contention that the People failed to present sufficient evidence to sustain her conviction for second degree burglary.

¶ 29     When addressing a challenge to the sufficiency of the evidence, "[w]e review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction." *McCoy*, ¶ 63 (citing *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).  We assess whether the evidence, when viewed in the light most favorable to the prosecution, "is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *Clark*, 232 P.3d at 1291).

¶ 30     Wright contends only that there was insufficient evidence to establish that, at the time she entered Bloch's apartment, she had the specific intent to commit harassment.  Instead, she contends, the evidence showed that she simply intended to look for her daughter.  Wright's argument, however, is premised on the flawed assumption that she could not have simultaneously held both intentions.

¶ 31     True, there was substantial evidence presented that Wright was searching the apartment complex in an attempt to find her

daughter.[8] But there was also evidence that when she ultimately entered Bloch's apartment, she did so with the intent to subject him to physical contact. Indeed, Bloch testified that when he opened his door to tell Wright to leave, she immediately "bum rushed" him and tried to grab him by his throat — which a reasonable jury could infer involved forcibly shoving him and/or striking him on her way into his apartment. He further testified that immediately after Wright had forcibly entered his apartment, a lengthy physical altercation ensued.

¶ 32     Though Wright argued to the jury that Bloch's testimony was not credible, she does not argue that his testimony was incredible as a matter of law. *See People v. Dash*, 104 P.3d 286, 289 (Colo. App. 2004) ("[T]he fact finder, not an appellate court, determines the credibility of witnesses, and only when testimony is 'so palpably incredible and so totally unbelievable' may we reject it as a matter of law." (quoting *Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988)). And when viewed in the light most favorable to the prosecution, we

---

[8] Of course, there was evidence that could lead a jury to reject that contention as well, including that Wright told one person she was looking for "Alexis" and told Bloch she was looking for "Jasmine."

14

conclude that Bloch's testimony was sufficient to support a conclusion by a reasonable mind that Wright entered the apartment with an intent to commit harassment. *See* § 18-9-111(1)(a); *see also Dash*, 104 P.3d at 289; *People v. Chase*, 2013 COA 27, ¶ 50 ("If there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element."). That Wright may have also harbored an intention to search for her daughter is of no import. Accordingly, we reject Wright's sufficiency challenge. *See McCoy*, ¶ 63.

## III.    The Trial Court's Ex Parte Communications with the Jury

¶ 33     Next, Wright argues that the trial court violated her constitutional right to counsel and right to be present by holding an impromptu scheduling conference with the jury outside the presence of Wright and her defense counsel. We disagree.

### A.    Additional Facts

¶ 34     The jury began its deliberations on March 2, 2018 — a Friday — at around 2:00 p.m. At 4:51 p.m., without either Wright or her

defense counsel present,[9] the trial court released the jurors for the weekend and instructed them on how they should conduct themselves:

> Members of the jury, it's five minutes till 5:00. And so I'm going to go ahead and release you for the weekend. I want to thank you for the hard work you put into deliberations so far. What I'll order that you do is leave your notes and your notebook and anything related to this case in the jury deliberation room. Nobody is going to go in there looking through it. It will be safe and sound.
>
> I want you to just take a break from the case. Just take a break from the case. Remember that admonition, no independent research, not talking to anybody. You may be tempted after a couple of hours after deliberation, oh, I just need a little bit of information, and hit the Internet. Don't do it. Don't do it. I think it will be helpful for you all to have a whole weekend off and then hit the ground running on Monday at — let's do 8:30. All right. And we're thinking along the line on a Monday morning, so you want to be in line by 8:15 to get up here by 8:30. Okay. And keep in mind that as people start arriving on Monday morning, you can't talk about the case until the 12th person walks into the room. And

---

[9] The People point out that the original transcript of the March 2, 2018, proceedings indicated that Wright's defense counsel was present when the court excused the jury. However, in response to Wright's motion to settle the record, the trial court confirmed that the reference to Wright's defense counsel was a clerical error and that neither Wright nor her defense counsel was present.

once that 12th person walks in, then you can resume the deliberations where you left off. Okay.

¶ 35 Following this instruction, one of the jurors asked several questions about what would happen the following week:

> The Juror: We don't see you tomorrow. We just go straight in that room, and as soon as everyone arrives, we continue?
>
> . . . .
>
> The Court: On Monday.
>
> The Juror: Sorry, did I say tomorrow?
>
> The Court: We're not going to be here tomorrow. So Monday, you'll just go right back, you won't see any of the parties or me, you'll just get going with your deliberation.
>
> The Juror: Okay. So can we have the further process once we are done with deliberations. What happens?
>
> The Court: I can't tell you other than once you reach a verdict we'll certainly announce the verdict.
>
> The Juror: Do we tell her?
>
> The Court: Yes. As soon as you reach a verdict, you'll buzz for [court employees]. They will come back and presumably you would tell her you have a verdict, and then we'll call the parties in and take care of the case.

The Juror: Do you do sentencing the same day or is that a different day?

The Court: Sentencing doesn't play any role in this phase of things and so just follow that instruction. Doesn't have to do anything with the case. So but with that, I need to let you go. Okay. Have a good weekend, and we'll see you Monday.

The Juror: Have a good weekend.

The Court: Thank you. You too.

## B. Right to Counsel

¶ 36 Both the United States and Colorado Constitutions guarantee a defendant the right to counsel "at every critical stage of a criminal proceeding." *Key v. People*, 865 P.2d 822, 825 (Colo. 1994) (first citing U.S. Const. amend. VI; then citing Colo. Const. art. II, § 16; then citing *United States v. Cronic*, 466 U.S. 648, 659 (1984); and then citing *People v. Roybal*, 618 P.2d 1121, 1126 (Colo. 1980)). "We review whether a defendant has been denied representation at a critical stage of the proceedings de novo." *People v. Guzman-Rincon*, 2015 COA 166M, ¶ 15.

¶ 37 "Stages of criminal proceedings have been held to be 'critical' where there exists more than a 'minimal risk' that the absence of the defendant's counsel might impair the defendant's right to a fair

18

trial." *Key*, 865 P.2d at 825 (first citing *Gilbert v. California*, 388 U.S. 263, 267 (1967); and then citing *Sandoval v. People*, 172 Colo. 383, 389, 473 P.2d 722, 725 (1970)). As it pertains to ex parte communications,

> [n]ot every communication between the judge and jury constitutes a critical stage of the trial. However, an impromptu conference with the jury during its deliberations may constitute a critical stage of the proceedings even where the discussions are purportedly confined to "scheduling" matters, because the content of such ex parte communications and the context in which they occur may create more than a "minimal risk" that counsel's absence would impair the defendant's right to a fair trial.

*Id.*

¶ 38     Wright argues that two specific communications between the trial court and the jury created such a risk, and thus the ex parte conference constituted a critical stage of her criminal proceedings. However, in our view, neither created a level of risk sufficient to implicate her constitutional right to counsel.

¶ 39     First, Wright directs us to the court's remark that "I think it will be helpful for you all to have a whole weekend off and then hit the ground running on Monday." She contends that the jury may have understood the statement as a criticism of the amount of time

the jury was taking to deliberate. Thus, she suggests, the statement may have had a coercive impact on the jury.

¶ 40 Yet the court's statement was a far cry from the type of "scheduling pressures" that Colorado courts have found to create a risk of coercion on the jury's deliberative process. Indeed, generally only those scheduling discussions that allude to a deadline for deliberations are considered coercive. *See id.* at 825-26 (deciding that a scheduling conference implicated a defendant's right to counsel where two jurors' comments — which indicated a substantial incentive to reach a verdict that afternoon — were analogous to a "time-fuse" instruction); *People v. Urrutia*, 893 P.2d 1338, 1343 (Colo. App. 1994) ("Discussing scheduling problems with the jury may . . . be coercive if those scheduling problems create an impression that the jury is under a short time limit to reach a verdict."); *see also Martin v. People*, 2014 CO 68, ¶ 25 (recognizing where a trial court failed to provide a mistrial advisement that "discussing scheduling pressures with the jury may be coercive if those discussions effectively impose a deadline for the jury to end its deliberations with a verdict or have a mistrial declared"). Here, the trial court's statement, in our view, was not

suggestive of any deadline for deliberations. On the contrary, the trial court's decision to give the jurors two days off indicated, if anything, a lack of urgency. Thus, we reject Wright's argument that the statement carried a risk of coercion sufficient to implicate her constitutional right to counsel.

¶ 41     Second, Wright directs us to the exchange concerning sentencing procedures. She construes the juror's question as to when sentencing occurs as an implication that the jury intended to find Wright guilty. And the court's visible response, she argues, may have suggested an affirmation of that finding. But the court was careful to avoid answering the question. In its brief response, it merely cautioned that "[s]entencing doesn't play any role in this phase of things" and "[d]oesn't have to do anything with the case." Thus, while the record does not reveal the court's visible response, it nonetheless shows that the court was dismissive of the question and sought to avoid any response that would suggest an opinion as to Wright's guilt or innocence. Moreover, to the extent Wright suggests that the exchange could be construed as a scheduling discussion, neither the juror's question nor the court's response alluded to the length of deliberations such that they carried a risk

21

of coercing the jury. *See Key*, 865 P.2d at 825. Accordingly, under the circumstances, we conclude that any risk created by the exchange was minimal at best.

¶ 42 In sum, we reject Wright's contention that the court's ex parte conference carried the "more than . . . 'minimal risk'" necessary to constitute a critical stage of her prosecution. *Id.* Thus, we discern no violation of her constitutional right to counsel in holding the conference without defense counsel present. *See id.*

## C. Right to be Present

¶ 43 Nor do we discern a violation of Wright's right to be present.

¶ 44 The United States and Colorado Constitutions guarantee a criminal defendant the right to be present "whenever [her] presence has a relation, reasonably substantial, to the fullness of [her] opportunity to defend against the charge." *Zoll v. People*, 2018 CO 70, ¶ 20 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). "In other words, the defendant's presence is only required 'to the extent that a fair and just hearing would be thwarted by [her] absence.'" *Id.* (quoting *Stincer*, 482 U.S. at 745). "Consequently, the right to be present is not constitutionally guaranteed when the defendant's presence would be useless or when the benefit of the

defendant's presence would be 'but a shadow.'" *Id.* (quoting *Stincer*, 482 U.S. at 745). "Whether a trial court violated a defendant's right to be present is a constitutional question that is reviewed de novo." *Id.* at ¶ 15 (quoting *Guzman-Rincon*, ¶ 29).

¶ 45    We first note that, in her briefs, Wright appears to conflate the right to counsel and the right to be present. She cites inapposite authorities addressing only the right to counsel to support her distinct claim that her right to be present was violated. And it appears, at times, that her arguments concerning her right to counsel are also intended to apply to her right to be present. But to the extent she argues that the two specific communications addressed in Part III.B also implicated her constitutional right to be present, we disagree. For the reasons expressed above, neither casts any doubt on the fairness of the proceedings, nor required Wright's presence to ensure that "a fair and just hearing [was not] thwarted by [her] absence." *Id.* (quoting *Stincer*, 482 U.S. at 745).

¶ 46    Otherwise, Wright appears only to assert, in conclusory fashion, that she ought to have "the right to know the jurors' questions and concerns expressed in open court" and "be able to observe and assess the jurors' questions and the court's

23

instructions." But Wright ignores that the constitution only guarantees her presence where "a fair and just hearing would be thwarted by [her] absence.'" *Id.* (quoting *Stincer*, 482 U.S. at 745). She advances no specific argument as to why her presence, as distinguished from that of her counsel, was necessary to ensure the fairness of the proceeding. Nor does our own review of the record indicate that the communications between the court and the jury so required her presence.

¶ 47 Accordingly, we reject Wright's contention that the ex parte conference violated her constitutional right to be present.

## IV. Proportionality of Wright's Sentence

¶ 48 Finally, Wright argues that her forty-eight-year sentence for second degree burglary raised an inference of gross disproportionality, and thus the trial court erred by failing to conduct an extended proportionality review. Because we conclude that the trial court's abbreviated review was flawed, we remand for the court to reconsider the proportionality of Wright's sentence.

## A. Additional Facts

¶ 49 At Wright's sentencing hearing, the trial court found that the People had presented sufficient evidence to support a finding that

Wright had previously been convicted of the following felonies: robbery, POWPO, first degree trespass, criminal impersonation, and aggravated motor vehicle theft. Thus, the trial court adjudicated Wright a habitual offender. Accordingly, it was required by section 18-1.3-801, C.R.S. 2020 — the habitual criminal sentencing statute — to impose a forty-eight-year sentence for Wright's burglary conviction. *See* § 18-1.3-801(2)(a)(I)(A); § 18-1.3-401(1)(a)(V)(A), C.R.S. 2020; § 18-4-203(1), (2)(a).

¶ 50    Wright requested that the trial court conduct a review of the mandatory forty-eight-year sentence to determine if it was unconstitutionally disproportionate. In an abbreviated proportionality review, the court determined that second degree burglary, robbery, and POWPO were per se grave or serious crimes. However, it found that Wright's other crimes — trespass, impersonation, and aggravated motor vehicle theft — were not grave or serious. Ultimately, though, the court concluded that the sentence was not unconstitutionally disproportionate. The court reasoned that while three of Wright's predicate offenses were not grave or serious, when considered in combination with Wright's three offenses that were per se grave or serious, the sentence did

not raise an inference of gross disproportionality. Accordingly, it found that an extended proportionality review was not warranted and imposed the forty-eight-year sentence.

### B. Standard of Review and Applicable Law

The Eighth Amendment to the United States Constitution and article II, section 20 of the Colorado Constitution both prohibit the imposition of a sentence grossly disproportionate to the severity of a defendant's crime. *See Wells-Yates*, ¶¶ 5, 10. Whether a sentence is grossly disproportionate is a question of law that we review de novo. *Id.* at ¶ 35.

### 1. Proportionality Review in General

The determination of whether a sentence is unconstitutionally disproportionate entails a two-step analysis. *See Wells-Yates*, ¶ 10.

First, the court conducts an "abbreviated proportionality review," in which the court considers "the gravity or seriousness of the offense and the harshness of the penalty." *Id.* at ¶ 11.

"[T]he determination regarding the gravity or seriousness of the offense is 'somewhat imprecise . . . .'" *Id.* at ¶ 12 (quoting *People v. Gaskins*, 825 P.2d 30, 36 (Colo. 1992), *abrogated on other grounds by Wells-Yates*, ¶¶ 26-27). Generally, however, it "requires

26

a consideration of the harm caused or threatened to the victim or society and the culpability of the offender." *People v. Session*, 2020 COA 158, ¶ 33; *accord Wells-Yates*, ¶ 12. Thus, the court should consider

> the absolute magnitude of the crime, whether the crime is a lesser included offense or the greater inclusive offense, whether the crime involves a completed act or an attempt to commit an act, and whether the defendant was a principal or an accessory after the fact in the criminal episode.

*Session*, ¶ 33 (citing *Wells-Yates*, ¶ 12). "As it relates to the defendant's culpability, motive is relevant, as is whether the defendant's acts were negligent, reckless, knowing, intentional, or malicious." *Id.* (citing *Wells-Yates*, ¶ 12).

¶ 55    Our supreme court has recognized, however, that some crimes may be considered per se grave or serious for proportionality purposes. *Wells-Yates*, ¶ 13 (first citing *Close v. People*, 48 P.3d 528, 538 (Colo. 2002), *abrogated on other grounds by Wells-Yates*, ¶¶ 16-17, 26-27; then citing *People v. Deroulet*, 48 P.3d 520, 524 (Colo. 2002), *abrogated on other grounds by Wells-Yates*, ¶¶ 16-17, 26-27; and then citing *Gaskins*, 825 P.2d at 37). A crime is per se grave or serious if, "based on [its] statutory elements, [it] necessarily

27

involve[s] grave or serious conduct." *Id.* at ¶ 63; *see also Session,* ¶ 35 (recognizing that this is the "new standard by which courts determine whether an offense is per se grave or serious"). "Put differently, a crime should not be designated per se grave or serious unless the court concludes that the crime would be grave or serious in every potential factual scenario." *Wells-Yates,* ¶ 63. If a crime is considered per se grave or serious, "a trial court may skip the first subpart of step one — the determination regarding the gravity or seriousness of the crime[] — and 'proceed directly to the second subpart' of that step — the assessment related to the harshness of the penalty." *Id.* at ¶ 13 (quoting *Close,* 48 P.3d at 538).

¶ 56    As to the harshness of the penalty, which is weighed against the gravity of the offense, the court must consider the length of the sentence as well as parole eligibility. *Id.* at ¶ 14.

¶ 57    Second, if the abbreviated proportionality review gives rise to an inference of gross disproportionality, then the court conducts an extended proportionality review, which compares the sentence at issue to sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *Id.* at ¶¶ 15-17.

2.    Proportionality Review of a Habitual Criminal Sentence

¶ 58    Section 18-1.3-801, which governs habitual criminal punishment in Colorado, "'create[s] a unique possibility' that a defendant will receive a sentence that 'is not proportionate to the crime for which [she] has been convicted.'" *Wells-Yates*, ¶ 20 (quoting *Alvarez v. People*, 797 P.2d 37, 40 (Colo. 1990)).

¶ 59    As pertinent here, when a defendant is convicted of a felony (a triggering offense), she may be adjudicated a habitual criminal if she "has been three times previously convicted . . . of a felony" based on charges separately brought and tried that arose out of separate and distinct criminal episodes (predicate offenses). § 18-1.3-801(2)(a)(I).  A defendant adjudicated a habitual criminal based on three or more predicate offenses must be punished for the triggering offense "by imprisonment in the department of corrections for a term of four times the maximum of the presumptive range . . . for the class or level of felony" of the triggering offense.  § 18-1.3-801(2)(a)(I)(A).

¶ 60    "The concern" as to the potential disproportionality of a habitual criminal sentence "lies in the 'formulaic and formalistic nature' of the habitual criminal statute." *Wells-Yates*, ¶ 20 (quoting *Deroulet*, 48 P.3d at 526).  Still, "in habitual criminal cases, as in

other cases raising Eighth Amendment challenges, an abbreviated proportionality review will almost always yield a finding that the sentence is not unconstitutionally disproportionate." *Id.* at ¶ 21.

¶ 61 During an abbreviated proportionality review of a habitual criminal sentence, the court must consider: "(1) the gravity or seriousness of all the offenses in question — the triggering offense and the predicate offenses; and (2) the harshness of the sentence imposed on the triggering offense." *Id.* at ¶ 23. "The court must scrutinize the triggering offense and the predicate offenses and determine whether in combination they are so lacking in gravity or seriousness so as to suggest that the sentence is unconstitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." *Id.* The supreme court clarified, however, that "when the triggering offenses and/or the predicate offenses supporting a habitual criminal sentence include grave or serious crimes . . . , it would be improper for a court to skip the second subpart of an abbreviated proportionality review and neglect to consider the harshness of the penalty . . . ." *Id.* at ¶ 27. If an inference exists that the sentence is disproportionate, "an extended

proportionality review must be undertaken. If not, the sentence is proportionate." *Session*, ¶ 38 (citing *Wells-Yates*, ¶ 76).

## C.   Analysis

¶ 62     Wright argues that the trial court erred by (1) finding that robbery, second degree burglary, and POWPO are per se grave or serious crimes and (2) misapplying the law by not assessing the harshness of Wright's penalty in its review. Thus, she argues, the court engaged in a flawed proportionality analysis, and she urges us to set aside its decision and make a finding that her sentence raises an inference of gross disproportionality. We agree that the court erred in finding that the crimes of second degree burglary and POWPO are per se grave or serious. We also agree that the court's analysis did not follow the analytical framework set forth in *Wells-Yates*. We, of course, recognize that the court did not have the benefit of the *Wells-Yates* decision at the time it sentenced Wright. Nevertheless, Wright is entitled to the benefit of both the new standard for determining whether a crime is to be considered per se grave or serious and the clarification of the analytical framework that must be followed. *See Session*, ¶¶ 50-51; *People v. Tran*, 2020 COA 99, ¶ 103.

31

¶ 63     However, as further discussed below, we decline Wright's invitation to find an inference of gross disproportionality. Instead, we remand for the trial court to conduct a new proportionality review.

### 1. Per Se Grave or Serious Designations Do Not Violate United States Supreme Court Precedent

¶ 64     As an initial matter, Wright contends that the designation of a crime as per se grave or serious violates the principle announced in *Solem v. Helm,* 463 U.S. 277, 290 (1983), that "no penalty is per se constitutional." We are not persuaded.

¶ 65     Wright overlooks that finding an offense grave or serious — either per se or in light of the particular factual circumstances of the offense committed — does not end a court's inquiry into the proportionality of a sentence. *See Wells-Yates*, ¶ 10. A court must still consider the harshness of the penalty before it can conclude that a sentence does not raise an inference of gross disproportionality and affirm its constitutionality. *See id.* And the same is true of habitual criminal sentences. *See id.* at ¶ 23. Indeed, as noted above, the court in *Wells-Yates* made clear that even when the triggering offenses and/or the predicate offenses

supporting a habitual criminal sentence include grave or serious crimes, a court must consider the harshness of the penalty. *Id.* at ¶ 27. The court explicitly cautioned that a sentencing court could not conclude that, in such circumstances, "there can be no inference of gross disproportionality." *Id.* Thus, a per se grave or serious designation does not, as Wright suggests, effectively render an accompanying sentence constitutional. And in any event, we are bound to follow our supreme court's decision in *Wells-Yates*, in which the court reiterated that per se designations may be appropriate for certain offenses. *See id.* at ¶¶ 13, 63.

### 2. Second Degree Burglary and POWPO Are Not Per Se Grave or Serious Crimes

¶ 66 Having rejected Wright's challenge to Colorado's per se designation scheme, we next consider the propriety of the trial court's designations of Wright's robbery, second degree burglary, and POWPO convictions as per se grave or serious. We address each in turn.

### a. Robbery

¶ 67 As to robbery, our supreme court has consistently recognized that the offense is per se grave or serious. *See Gaskins*, 825 P.2d at

33

37; *Close*, 48 P.3d at 538; *Wells-Yates*, ¶ 64. This is because "[n]o matter what facts and circumstances may be involved, if a defendant is convicted of robbery, it necessarily means that he knowingly took something of value from the person or presence of another by the use of force, threats, or intimidation." *Wells-Yates*, ¶ 64 (citing § 18-4-301(1), C.R.S. 2020). "Thus, robbery, by its very nature, involves knowing conduct and grave harm (or the threat of grave harm) to the victim or society (or both)." *Id.* In other words, it meets the standard for per se grave or serious crimes articulated in *Wells-Yates*. *See id.* at ¶ 63.

¶ 68    Wright does not contend that robbery falls short of the *Wells-Yates* standard; she only reiterates her claim that it is unlawful to designate any offense per se grave or serious under *Solem*. Having rejected that argument, and in light of our supreme court precedent, we discern no error in the trial court's conclusion that Wright's prior robbery conviction was per se grave or serious.

### b.    Second Degree Burglary

¶ 69    However, we cannot say the same of the court's designation of second degree burglary as per se grave or serious.

¶ 70      In *Wells-Yates*, our supreme court acknowledged that it had previously held burglary to be a per se grave or serious crime. *Wells-Yates*, ¶¶ 13, 65; *see also Deroulet*, 48 P.3d at 524 (noting that burglary is inherently "'grave or serious' for purposes of proportionality review"). But it called into question "whether the designation of burglary as a per se grave or serious crime extends to . . . second degree burglary" under the new standard it announced. *Wells-Yates*, ¶ 65 n.17.[10]  Because the issue was not before the court, however, the court declined to resolve it. *Id.*

¶ 71      In the wake of *Wells-Yates*, though, a division of this court concluded that second degree burglary is not a per se grave or serious crime under *Wells-Yates*'s newly announced standard. *Session*, ¶ 46. The division, offering two specific examples, reasoned that the commission of second degree burglary may not be grave or serious in every factual permutation. *See id.* at ¶¶ 46, 48 ("Neither of these versions of second degree burglary are likely to be grave or serious": (1) entering an unoccupied garage and stealing a bicycle and (2) entering an abandoned building to steal copper

---

[10] The burglary conviction in *People v. Deroulet*, 48 P.3d 520, 522 (Colo. 2002), was for first degree burglary.

wiring.).  Accordingly, the division concluded that the offense failed to meet the *Wells-Yates* standard.  *Id.* at ¶ 49; *see Wells-Yates*, ¶ 63.

¶ 72    We agree with the division's reasoning in *Session* and see no reason to depart from its holding.  Applying that holding here, we conclude that the trial court erred by finding Wright's second degree burglary conviction per se grave or serious.  Rather, the court was required to examine the underlying factual circumstances of Wright's crime to determine its gravity or seriousness.  *See Session,* ¶ 36 (citing *Wells-Yates*, ¶¶ 37-39).  But it did not do so.

### c.    POWPO

¶ 73    Nor do we agree with the trial court's conclusion that Wright's POWPO conviction is per se grave or serious.

¶ 74    "[D]esignating a crime per se grave or serious has significant consequences and courts should therefore do so cautiously."  *Wells-Yates*, ¶ 62.  This is because such a designation may "render[] a sentence nearly impervious to attack on proportionality grounds" in light of the "great deference" afforded to "the legislature's establishment of the harshness of the penalty."  *Id.* (quoting *Close,* 48 P.3d at 538).  "This concern is magnified in the habitual criminal

context, where every sentence under review has been imposed without the trial court's exercise of discretion." *Id.*

¶ 75    With those guiding principles in mind, we address, as a matter of first impression, whether POWPO meets the standard announced in *Wells-Yates.*

¶ 76    A person commits POWPO if

> the person knowingly possesses, uses, or carries upon his or her person a firearm as described in section 18-1-901(3)(h)[, C.R.S. 2020,] or any other weapon that is subject to the provisions of this article subsequent to the person's conviction for a felony, or subsequent to the person's conviction for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law.

§ 18-12-108(1), C.R.S. 2020.

¶ 77    Thus, to commit POWPO, a convicted felon need only knowingly possess a weapon; the offender need not actually use the weapon or even intend to do so.  And the mere possession — or in some cases even the use — of a weapon may not always be grave or serious, even where the person with the weapon has a prior felony conviction.  Take, for example, a person who was previously convicted of embezzlement of public property — a nonviolent felony. *See* § 18-8-407, C.R.S. 2020.  By simply going elk hunting, that

person has committed POWPO.  Such conduct, in our view, does not present a sufficient level of harm or threat of harm such that it could be considered inherently grave or serious.  *See Wells-Yates*, ¶ 12.

¶ 78     To be sure, some, if not most, factual permutations of POWPO may indeed be considered grave or serious.  *See id.*  But, as shown above, the commission of the crime may not "be grave or serious in every potential factual scenario."  *Id.* at ¶ 63.  Thus, POWPO is not one of "those rare crimes which, based on their statutory elements, necessarily involve grave or serous conduct."  *Id.*  Accordingly, we conclude that POWPO does not meet the standard from *Wells-Yates*, and thus the trial court's designation of the crime as per se grave or serious was erroneous.[11]

---

[11] Neither party cited *People v. Allen*, 111 P.3d 518, 520 (Colo. App. 2004), a case that predated *Wells-Yates v. People*, 2019 CO 90M, in which a division of this court concluded that POWPO is a per se grave or serious crime.  However, in light of *Wells-Yates*'s newly announced standard for designating crimes per se grave or serious, we disagree with *Allen* and decline to follow it.  *See People v. Smoots*, 2013 COA 152, ¶ 21 ("[W]e are not bound by the decisions of other divisions of this court."), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

¶ 79    Consequently, like Wright's second degree burglary conviction, the court was required to consider the particular factual circumstances of her POWPO conviction. *See Session*, ¶ 36 (citing *Wells-Yates*, ¶¶ 37-39). It failed to do so.

¶ 80    In sum, then, the court erred in its proportionality review by (1) designating Wright's second degree burglary and POWPO convictions per se grave or serious and, consequently, (2) failing to consider the particular factual circumstances of those convictions. Thus, a new proportionality review must be conducted to determine whether Wright's sentence is unconstitutionally disproportionate. *See id.* at ¶ 51. Wright requests that we do so now — she urges us to engage in our own abbreviated proportionality review and find that her sentence raises an inference of gross disproportionality.

¶ 81    However, whether Wright's second degree burglary and POWPO convictions are grave or serious "will entail an analysis of the facts and circumstances surrounding [those] offense[s]." *Wells-Yates*, ¶ 75. And "the trial court is 'uniquely suited' to make these factual determinations." *Id.* (quoting *Gaskins*, 825 P.2d at 35). This is particularly true where the appellate record may not be complete with respect to the details of one or more of the predicate

offenses.  Thus, while it may be proper in some circumstances for us to conduct an abbreviated proportionality review on appeal, *see Session*, ¶ 51 (suggesting as much), we decline to do so here. Instead, we vacate Wright's sentence and remand to the trial court to conduct a new abbreviated proportionality review and, if necessary, an extended proportionality review.  *See Wells-Yates*, ¶ 75; *Session*, ¶ 51.

   3.   The Court Must Consider the Harshness of Wright's Penalty

¶ 82   Not having the benefit of *Wells-Yates*, which was announced several months after the trial court sentenced Wright, the court may have committed another error in its proportionality review.

¶ 83   After finding robbery and second degree burglary to be per se grave or serious crimes, the trial court stated,

> My understanding of grave or serious crimes is if they fall into that category, I don't even look past what the conviction is for to see what the actual facts were.  The fact that that conviction exists means there's not going to be a disproportionate sentence.

¶ 84   The trial court was correct in observing that there is no need to consider the specific factual circumstances of a crime to determine its gravity or seriousness where the crime is per se grave

40

or serious. *See Wells-Yates*, ¶ 13. But its suggestion that a sentence imposed on a per se grave or serious crime will always be constitutionally proportionate is at odds with *Solem*'s admonishment that "no penalty is per se constitutional." 463 U.S. at 290. And the court's apparent belief that it need not also consider the harshness of the penalty in an abbreviated proportionality review is inconsistent with the supreme court's guidance in *Wells-Yates*. *See Wells-Yates*, ¶¶ 26-27.

¶ 85    Moreover, after finding POWPO to be a per se grave or serious crime, the court noted, "I don't need to look beyond that fact to determine whether an extended, proportionality review is merited." Again, the court improperly suggested that a finding that a crime is per se grave or serious ended its abbreviated proportionality inquiry. *See id.*

¶ 86    The People point out, however, that the court nonetheless appeared to consider the length of Wright's sentence and her eligibility for parole — factors pertinent to an analysis of the harshness of her penalty. *See id.* at ¶ 14; *Session,* ¶ 37. Having already vacated Wright's sentence, we need not determine whether the court properly weighed the harshness of Wright's penalty

41

despite its insistence that it need not do so. However, because the issue will arise again on remand, we reiterate that "even when the triggering offenses and/or the predicate offenses supporting a habitual criminal sentence include grave or serious crimes" — either per se grave or serious crimes or those crimes where the underlying conduct is found to have been grave or serious — "it would be improper for a court to skip the second subpart of an abbreviated proportionality review and neglect to consider the harshness of the penalty or to conclude that when the circumstances described are present there can be no inference of gross disproportionality." *Wells-Yates*, ¶ 27.

## V. Conclusion

¶ 87    The judgment of conviction is affirmed, the forty-eight-year sentence for second degree burglary is vacated, and the case is remanded for a new proportionality review consistent with this opinion. In conducting its abbreviated proportionality review on remand, the trial court is specifically instructed to (1) consider the factual circumstances underlying Wright's second degree burglary and POWPO convictions to determine the gravity or seriousness of those crimes and (2) consider the harshness of Wright's

forty-eight-year sentence in light of the gravity or seriousness — or lack thereof — of Wright's triggering and predicate offenses.

JUDGE FURMAN and JUDGE GOMEZ concur.