24CA0073 Peo v Gilbert 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0073
Arapahoe County District Court No. 17CR1810
Honorable Ben L. Leutwyler III, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

JZell James Gilbert,

Defendant-Appellant.

---

SENTENCE AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

JZell James Gilbert, Pro Se

¶ 1 Defendant, JZell James Gilbert, appeals his seventy-two-year habitual criminal sentence, contending that the district court erred by concluding that his sentence didn't raise an inference of gross disproportionality. We affirm.

## I. Background

¶ 2 A jury convicted Gilbert of second degree murder for killing his sister's boyfriend. The prosecution's evidence showed that Gilbert stabbed the victim five times in the chest, neck, back, and arm. The district court adjudicated Gilbert a habitual offender based on two prior felony convictions and sentenced him to seventy-two years in the custody of the Department of Corrections (DOC). Gilbert appealed his conviction, adjudication, and sentence. A division of this court affirmed Gilbert's conviction but vacated his sentence and remanded the case to the district court to conduct a new proportionality review in light of *Wells-Yates v. People*, 2019 CO 90M (*Wells-Yates I*). *See People v. Gilbert*, (Colo. App. No. 19CA2116, June 9, 2022) (not published pursuant to C.A.R. 35(e)).

¶ 3 On remand, the same judge who presided over the trial, the habitual offender hearing, and the original sentencing conducted a new proportionality review after receiving supplemental briefing. In

1

a detailed written order, the court determined that each of Gilbert's relevant offenses — his two predicate offenses for menacing and possession of a weapon by a previous offender (POWPO) and his triggering offense for second degree murder — constituted grave and serious offenses under the *Wells-Yates I* framework. Concluding that its original sentence wasn't grossly disproportionate, the court again sentenced Gilbert to seventy-two years in the custody of DOC.

¶ 4    Gilbert now appeals. He contends that the district court erred in its abbreviated proportionality analysis by (1) considering facts that crept beyond his predicate conviction for POWPO; (2) determining that POWPO is grave and serious, which in turn led it to erroneously conclude that his sentence wasn't grossly disproportionate; and (3) denying his motion to strike evidence as untimely.

## II.    Discussion

### A.    Facts and Circumstances Surrounding POWPO

¶ 5    We first address Gilbert's contention that the district court erred by considering facts and circumstances in its abbreviated proportionality analysis that strayed from his predicate POWPO

2

offense.  He asserts that the court wrongly considered certain facts that gave rise to a related robbery count that the prosecution later dismissed in exchange for him pleading guilty to POWPO.  We aren't persuaded.

### 1.  Applicable Law and Standard of Review

¶ 6     The Eighth Amendment to the United States Constitution and article II, section 20 of the Colorado Constitution both prohibit cruel and unusual punishments.  These provisions forbid extreme sentences that are grossly disproportionate to the crime.  *Wells-Yates I*, ¶¶ 5, 10 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)).

¶ 7     In assessing a defendant's challenge to the proportionality of their sentence, a court first conducts an abbreviated proportionality review.  *People v. Wells-Yates*, 2023 COA 120, ¶ 15 (*Wells-Yates II*).  During an abbreviated proportionality review, the court considers two subparts to determine whether the sentence gives rise to an inference of gross disproportionality: (1) the gravity or seriousness of the offense and (2) the harshness of the penalty.  *Wells-Yates I*, ¶¶ 7-8, 11.  The analysis expands slightly, however, when a defendant challenges the proportionality of a habitual criminal

sentence. In that instance, the court must analyze the gravity or seriousness of *all* the offenses in question (the triggering offense and the predicate offenses), and the harshness of the sentence imposed on the triggering offense. *Id.* at ¶ 23. If this first step gives rise to an inference of gross disproportionality, the court must proceed to the second step and conduct an extended proportionality review. *See id.* at ¶ 7 (discussing the step-two analysis). But if the step-one analysis doesn't give rise to an inference of gross disproportionality, the proportionality challenge fails and the court must uphold the sentence. *Id.* at ¶ 8.

¶ 8    Some offenses are "per se" grave or serious, allowing the court to skip over the first subpart of the abbreviated proportionality review. *Id.* at ¶ 13. For offenses that aren't deemed per se grave or serious, the court may still determine on a case-by-case basis that a defendant's particular crime constituted a grave or serious offense after considering the surrounding facts and circumstances. *Id.* at ¶ 71; *see, e.g., People v. Tran*, 2020 COA 99, ¶ 101.

¶ 9    To commit POWPO under section 18-12-108(1), C.R.S. 2024, a convicted felon "need only knowingly possess a weapon; the offender need not actually use the weapon or even intend to do so."

*People v. Wright,* 2021 COA 106, ¶ 77. As a result, POWPO isn't considered a per se grave or serious offense. *See id.* (observing that a convicted felon can commit POWPO by "simply going elk hunting"). But "some, if not most," factual permutations of POWPO may be considered grave or serious based on a case-by-case analysis of the surrounding circumstances. *Id.* at ¶ 78.

¶ 10 We review de novo whether a defendant's sentence is grossly disproportionate. *Wells-Yates I,* ¶ 35.

### 2. Analysis

¶ 11 The district court determined that Gilbert's predicate menacing and POWPO convictions and his triggering second degree murder conviction each constituted grave or serious offenses arising from three separate incidents. In analyzing Gilbert's POWPO offense specifically, the court considered the surrounding facts and circumstances as outlined in a statement of probable cause that had been previously admitted at the habitual offender hearing. The court stated as follows:

> In case 15CR4078, the statement of probable cause detailed that [Gilbert] held a taxi driver at gunpoint, demanded all of the victim's money, went through the victim's bag and stole cash and a cell phone. . . . These facts

demonstrate [Gilbert's] culpability through knowing, if not intentional conduct; and significant harm caused or threatened to the victim. The Court finds that these facts support a finding that this specific POWPO conviction was a grave and serious offense.

¶ 12    Gilbert asserts that the court erred by focusing on the facts involving the dismissed robbery count as set forth in the statement of probable cause. He argues that the prosecution dismissed the robbery charge because (1) the victim couldn't positively identify him as the perpetrator and (2) none of the items taken from the victim were found on or near him when the police later contacted him. According to Gilbert, the only facts supporting his POWPO conviction were the presence of a gun in the backpack he was wearing when arrested.

¶ 13    We conclude the court was permitted to examine the surrounding facts and circumstances underlying Gilbert's POWPO conviction, including those contained in the statement of probable cause, when evaluating the offense's gravity and seriousness. *See Wells-Yates II*, ¶¶ 26-30. In *Wells-Yates II*, for example, a division of this court held that a court conducting an abbreviated proportionality analysis may consider an arrest affidavit setting

forth "the aggravating facts of the offense as it was actually committed," even if those facts may have also supported a conviction for a greater offense than the offense to which the defendant pleaded guilty. *Id.* at ¶ 29; *see also id.* at ¶ 26 (stating a court may consider an arrest affidavit underlying a predicate offense, subject to it being challenged "like any other evidence"). To illustrate, the division explained that a court assessing the gravity or seriousness of a defendant's offense for possession of a controlled substance could also consider the defendant's alleged distribution of that substance, provided the distribution "is of the same drugs and occurs at the same time as the possession offense." *Id.* at ¶ 30.

¶ 14     In this case, the district court found, based on the statement of probable cause, that Gilbert's illegal possession of the weapon entailed holding a taxi driver at gunpoint, demanding his money, going through his bag, and stealing his cash and cell phone. Even if Gilbert wasn't convicted of the robbery, these facts were nevertheless part of the facts and circumstances surrounding the POWPO offense for which Gilbert *was* convicted. Moreover, Gilbert was afforded an opportunity to challenge the factual underpinnings of the statement of probable cause at the habitual offender hearing.

*See Wells-Yates II*, ¶ 26.  Under these circumstances, we can't say that the court impermissibly departed from the facts and circumstances of Gilbert's POWPO offense when evaluating its gravity and seriousness.

¶ 15     Even if we were to assume that the district court erred by finding that Gilbert's POWPO offense was grave and serious, we nevertheless perceive no basis for reversal.  In addition to finding Gilbert's triggering offense of second degree murder grave and serious, it also determined that his other predicate offense for felony menacing was grave and serious because he fired a handgun five to six times toward an apartment building, creating a significant risk of harm to the public and the specific victims.  Gilbert doesn't challenge these determinations on appeal.  Importantly, we need not deem every predicate offense grave or serious to reject Gilbert's proportionality challenge.  *See Wells-Yates I*, ¶ 24 ("[T]he inquiry is whether the corresponding triggering offense and the predicate offenses, *considered together*, are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate.") (emphasis added); *see also Wells-Yates II*, ¶¶ 65-66 (finding no inference of gross disproportionality in habitual

sentence for second degree burglary, despite deeming the predicate offenses "not especially grave or serious"). Considering the facts and circumstances surrounding Gilbert's triggering offense and his predicate offense for felony menacing, we agree with the district court that Gilbert's habitual sentence raises no inference of gross disproportionality.

¶ 16 Accordingly, the court didn't err by considering the surrounding facts and circumstances when assessing the gravity and seriousness of Gilbert's POWPO offense.

### B. Gravity and Seriousness of POWPO

¶ 17 Gilbert next contends that the district court erred by determining that POWPO is a grave or serious offense. As we understand his argument, the court erred by rejecting his proportionality challenge because POWPO hasn't been designated as a grave or serious offense by either the supreme court or a division of this court. We discern no error.

¶ 18 For the reasons discussed by the division in *Wright*, we agree with Gilbert that POWPO isn't grave or serious "in every potential factual scenario" and, therefore, isn't per se grave or serious. *Wright*, ¶ 78 (quoting *Well-Yates I*, ¶ 63). But we disagree with

9

Gilbert that POWPO can *never* constitute a grave or serious offense. As the *Wright* division explained, many, if not most, incidents of POWPO may rise to a grave or serious offense when evaluated on a case-by-case basis. *Id.*

¶ 19 That is essentially what the district court concluded here. It examined Gilbert's actions that gave rise to his POWPO conviction — holding the victim at gunpoint and stealing his money and cell phone — to determine that the offense as he actually committed it was both grave and serious. To the extent Gilbert challenges the court's case-specific determination, we perceive no basis for reversal. *See McDonald v. People*, 2024 CO 75, ¶ 12 (listing illustrative factors a court may consider in determining the gravity or seriousness of an offense, including, among others, the harm caused or threatened to the victim or society, whether the offense involved violence or the threat of violence, the magnitude of the crime, and the defendant's culpability and motive).

¶ 20 Accordingly, the district court didn't err by determining that Gilbert's POWPO offense, as it was actually committed, constituted a grave and serious offense.

## C. Motion to Strike

¶ 21 Gilbert next contends that the district court erred by denying his motion to strike evidence as untimely. We disagree.

¶ 22 In April 2023, the parties' attorneys submitted simultaneous briefs to the district court that outlined their respective positions regarding Gilbert's proportionality challenge. The prosecution's brief discussed the facts underlying Gilbert's POWPO conviction, explaining that Gilbert "robbed" the victim at gunpoint. On June 24, nearly three months after briefing, the district court issued its order rejecting Gilbert's proportionality challenge. Approximately four weeks later, Gilbert penned a pro se motion seeking "to strike the evidence from the dismissed robbery [count] presented by the [P]eople."[1] The court denied the motion as untimely, explaining that Gilbert filed it "well after" the court issued its order rejecting his proportionality challenge.

¶ 23 We review a district court's denial of a motion on timeliness grounds for an abuse of discretion. *See, e.g., People v. Johnson*, 2013 COA 122, ¶ 41; *see also People v. Sandoval-Candelaria*, 2014

---

[1] Gilbert's motion is dated July 25, 2023, although it wasn't received by the court until August 4, 2023.

11

CO 21, ¶ 26 ("[T]rial courts have broad discretion to manage their dockets.").

¶ 24 We perceive no abuse of discretion in the district court's ruling. Gilbert waited nearly four months after the prosecution submitted its brief before requesting that the court strike its evidence related to the dismissed robbery count. Although Gilbert attempts to blame his counsel for the delay, we note that he submitted his pro se motion without the benefit of counsel. Under these circumstances, and given that the court issued its proportionality order well before Gilbert mailed his belated motion to the court, we decline to disturb the court's ruling. *Cf. People v. Tyler*, 874 P.2d 1037, 1039 (Colo. 1994) ("A trial court may deny a late-filed suppression motion if the grounds therefor were known or by due diligence were reasonably discernible prior to trial.").

¶ 25 Accordingly, the district court didn't abuse its discretion by denying Gilbert's motion to strike as untimely.

### III. Disposition

¶ 26 We affirm the sentence.

JUDGE FREYRE and JUDGE SCHOCK concur.